STATE

v.

**Bryant BROWN.**

No. 99–34–C.A.

Supreme Court of Rhode Island.

March 17, 2000.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This matter came before the Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised by the defendant's appeal should not be summarily decided. After hearing the arguments of counsel and considering the memoranda submitted by both of the parties, we are of the opinion that cause has not been shown; consequently, the issues raised in the appeal will be decided at this time.

The defendant, Bryant Brown (the defendant), appeals from judgments of conviction for two counts of burglarizing the same house on two separate occasions. His sole issue on appeal is the denial of his motion to suppress show-up identifications that he maintains were unduly suggestive.[1] Tishia Anderson (Ms. Anderson), her brother, James Anderson (Mr. Anderson), and a Providence police officer, Sergeant Berarducci, testified at the suppression

---

1. On appeal, the defendant additionally asserts that the identifications were the fruits of an unlawful arrest. This issue was not raised below; consequently it has been waived. *See State v. Austin,* 731 A.2d 678, 681 (R.I.1999).

hearing. Their testimony revealed the following pertinent facts.

The two burglaries occurred in Ms. Anderson's home, where she lived with her son, her brother and his girlfriend, and their two young children. In the early hours of October 4, 1996, Ms. Anderson observed a male intruder, later identified as the defendant, moving around the living-room of her apartment with a flashlight. She immediately concealed herself from the defendant's view and watched him through the open door of her bedroom as he attempted to unhook the plugs of a stereo system. Besides the light from the flashlight, the living room was illuminated by a lamp in the kitchen. At one point, the defendant looked into her bedroom for about one minute. He did not see her watching him just five feet from where he stood.

The defendant's activities were rudely disturbed when Mr. Anderson's baby began to cry. As the baby's mother was coming out of her room to take care of the baby, she came upon the defendant and screamed. The defendant then grabbed a compact disk case and immediately fled from the apartment. Meanwhile, Ms. Anderson had called the police. The entire ordeal lasted for approximately ten minutes.

When the police arrived, Ms. Anderson described the intruder as a young, medium-built black male, about five feet eight inches tall, who was wearing a black jacket and black nylon pants. She testified that the most noticeable features of his face were his well-defined cheekbones and sunken cheeks, and that he looked like a "crackhead."

Impressed by what he had seen on his previous visit and presumably to satisfy his unquenchable attraction to her stereo system, the defendant returned to Ms. Anderson's apartment two and one-half weeks later, on October 21, 1996, between 2:30 a.m. and 3:00 a.m. This time, his not-so-stealthy movements disturbed Mr. Anderson, who was in bed watching television.[2] When the defendant peered around the corner into the bedroom, Mr. Anderson was only two feet away. With the help both from the light of the television and a light in the pantry, Mr. Anderson clearly saw the defendant's face and upper torso. When the defendant realized that he had been seen, he fled from the apartment. Mr. Anderson immediately jumped out of bed and gave chase. After the defendant escaped, Mr. Anderson called the police.

Mr. Anderson described the defendant as a black male, about five feet eight inches tall and weighing 150 pounds, with a large wide nose and a "low haircut." In addition, he said that the defendant was wearing a white T-shirt with an unusual design.

Approximately thirty minutes after the police had taken Mr. Anderson's statement, they returned to the apartment with the defendant, whom they just had arrested as a suspect. One of the officers asked Mr. Anderson to come out and see whether he recognized the defendant. After the defendant stepped out of the police cruiser and removed his jacket, Mr. Anderson immediately identified him as the intruder. Meanwhile, Ms. Anderson came out of the building to see what was happening. To the total surprise of everyone present, as soon as Ms. Anderson set eyes on the defendant she immediately exclaimed that he was the same individual who previously had broken into the apartment on October 4, 1996.

The defendant asserts that these identifications should have been suppressed because the show-up procedure was unduly suggestive. We disagree.

**2.** It should be noted that at the suppression hearing, as part of his trial strategy, the defendant waived his appearance during Mr. Anderson's initial testimony. The basis for this unusual step was that the defendant wished "to inquire as to whether this witness can still describe him to this day without the benefit of seeing him in court."

■ "Although show-up identifications have been widely criticized as unduly suggestive * * * they do not necessarily translate into violations of due process." *State v. Thompson,* 683 A.2d 378, 379 (R.I. 1996) (order). When reviewing show-up identifications,

> "[t]his Court employs a 'totality-of-the-circumstances test to determine whether a suggestive-identification procedure is reliable or inclined to give rise to a substantial likelihood of irreparable misidentification.' * * * Five factors are considered, including: the opportunity of the witness to observe the criminal during commission of the crime; the level of attention paid by the witness; the accuracy of the witness's description of the criminal; the witness's degree of confidence in the identification at the time of confrontation; and the amount of time elapsed between commission of the crime and the confrontation. * * * These factors are weighed against the corrupting effect' of a suggestive identification procedure." *State v. Rodriquez,* 731 A.2d 726, 731 (R.I.1999) (per curiam).

■ After hearing testimony and employing a totality of the circumstances test, the trial justice found the testimony of the two witnesses to be both credible and reliable. The trial justice determined that during each crime, both had ample opportunity to view the defendant at close range under sufficient lighting conditions. The trial justice noted that Mr. Anderson's identification was the product of his own very recent observations. He found that although there was a delay between Ms. Anderson's initial observation and her subsequent identification, her immediate, unprompted and certain identification of the defendant demonstrated that her initial observation had been of sufficient duration to give her a lasting impression of the intruder.

In addition to the findings made by the trial justice, the record indicates that both witnesses had given descriptions of the intruder to the police immediately after each incident, and neither wavered in being certain that the defendant was the intruder. Therefore, we are persuaded that the trial justice did not err in denying the defendant's motion to suppress the identifications made of him by the Andersons.

For the foregoing reasons, the defendant's appeal is denied and the judgments of conviction are affirmed. The papers of the case are remanded to the Superior Court.