**In re Micaela C.**

**No. 99–43–Appeal.**

Supreme Court of Rhode Island.

April 19, 2001.

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Washington Crossing, PA, for Plaintiff.

Jason M. Gramitt, Portsmouth, Thomas L. Mirza, Rumford, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent-father, Wesley Spratt (father), appeals from a Family Court decree terminating his parental rights to his daughter, Micaela C., born September 4, 1990. The Family Court terminated the parental rights of Regina C., mother of Micaela, on September 12, 1997 by a default judgment. Only the father is appealing the Family Court decree.

Micaela was committed to the care, custody and control of the Department of Children, Youth, and Families (DCYF or department) on July 18, 1994 after the child was found to be neglected by the father. On May 10, 1996, the department filed a termination of parental rights petition pursuant to G.L.1956 (1996 Reenactment) §§ 15–7–7(a)(2)(iii), (a)(3), (a)(2)(i) and (a)(2)(iv).[1] As applied to the father, the petition alleged: (1) that Micaela had been in the legal custody or care of the department and that her father's chronic substance abuse problems and prognosis indicated that she would not be able to return to the father's custody within a reasonable period of time, considering Micaela's age and need for a permanent home; (2) that Micaela had been in DCYF custody for at least twelve months and there was not a substantial probability that the child would be returned to her father within a reasonable period of time; (3) that the father was unfit as a parent by reason of emotional illness, mental illness, mental deficiency, or institutionalization, including imprisonment; and (4) that the court had previously terminated the father's parental rights to another child who is a member of the same family and the father continues to lack the ability or willingness to cooperate with services which led to the child being placed.

Thereafter, on February 13, 1997, the father was convicted of first-degree murder and sentenced to life imprisonment, without the possibility of parole. *See State v. Spratt*, 742 A.2d 1194, 1197 (R.I.1999). In addition, he was convicted of carrying a pistol without a license and committing a crime of violence when armed with a firearm. *Id.* He received a ten-year sentence as to each, consecutive to each other and to the life sentence. *Id.* He was also convicted for being a habitual offender and received a twenty-year sentence consecutive to the other sentences. *Id.* His conviction was later affirmed by this Court. *Id.*

The trial justice found that DCYF had proven by clear and convincing evidence that Micaela had been in the care of the department for at least twelve months. He also found that the department had offered the father services to correct the situation that led to the child being placed, but that, despite the department's efforts, the father did not follow through with DCYF's case-plan programs. The trial justice stated that "[e]ven if Mr. Spratt had not been incarcerated, his lack of commitment to follow through with services and visitation indicates that no placement with him would have been possible within a reasonable time." The trial justice also determined that the father's conviction and imprisonment "renders it improbable for

1. The General Assembly subsequently amended G.L.1956 § 15–7–7 in 1998, 1999, and 2000. The department filed the termination petition in this case on May 10, 1996; therefore, the amended statutes do not apply here.

him to care for the child for an extended period of time." He also found that the father's parental rights to another child, Ariana, had been terminated based upon his failure to cooperate with proffered services and to maintain contact with the child. Based upon these findings, the trial justice concluded that the father was unfit to parent Micaela. He concluded that it was in Micaela's best interests to terminate the father's parental rights, stating:

"The child never lived with Mr. Spratt. Mr. Spratt never parented the child. Micaela has lived with her grandmother[,] [Janice C.,] for her whole life. She is integrated into grandmother's home with her two siblings and [her grandmother] wants to adopt Micaela."

The trial justice granted the petition and terminated the respondent's parental rights. The father thereafter filed a timely notice of appeal.

This case came before this Court for oral argument pursuant to an order directing the father to show cause why his appeal should not be dismissed pursuant to G.L.1956 § 13–6–1—the civil death statute. After a hearing, this Court found that cause had been shown on this issue. Thereafter, we ordered the parties to show cause why this appeal should not be summarily decided on the merits, without reference to § 13–6–1. In light of this Court's order, the father raises a series of issues that address the merits of the decree granting this termination-of-parental-rights petition. Nevertheless, we conclude that cause has not been shown and that we can decide the appeal summarily.

The father argues that the termination of his parental rights does nothing to further the best interests of Micaela. The father also contends that the trial justice misconstrued or misapplied other subsections of § 15–7–7(a) that related to the father's substance abuse, to the probability of Micaela's safe return to her father's care, to the father's incarceration, and to the effect of a previous termination of the father's parental rights with respect to another child. In sum, the father contends that clear and convincing evidence did not exist so as to justify the trial justice's findings. We address each of these arguments below.

■ Our review of the record reveals that evidence does exist to support the trial justice's findings in this case. Indeed, the uncontradicted evidence showed that the father had a long-standing substance abuse problem, which he had refused to address. As was noted by the trial justice, the father's parental rights to Micaela's sister, Ariana, were terminated based upon the same issues as those raised in this case. Moreover, the evidence adduced at trial demonstrated that the father had failed to cooperate with drug treatment, despite the department's efforts in arranging for services. He missed numerous appointments and never completed treatment to the satisfaction of the department.

■ The father also argues that the trial justice was clearly wrong in terminating his parental rights based upon his imprisonment. It is his contention that his imprisonment, standing alone, was an insufficient basis for terminating his parental rights because it did not affect Micaela's living situation and because the department made no efforts to encourage and strengthen the parental relationship following his imprisonment.

Section 15–7–7(a)(2) permits the court to terminate the parental rights of a parent to a child if

"[t]he parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as * * * (i) * * * Institutionalization of the parent, includ-

ing imprisonment, of such a duration as to render it improbable for the parent to care for the child for an extended period of time."

In this case, the father is a convicted murderer who has been sentenced to a term of life without parole—plus an additional forty years for committing other crimes—and the various sentences were imposed consecutively to each other. *See Spratt*, 742 A.2d at 1197. Given the overall length of the father's sentences, it is extremely unlikely that he will be out of prison until long after Micaela reaches the age of majority. Therefore, we conclude, the trial justice properly noted that the father's imprisonment would render it improbable for him to care for Micaela for an extended period of time.

■ Although this Court has stated that parental rights should not be terminated solely because of conviction of a crime and the parent's subsequent incarceration, a parent's imprisonment may be considered along with other factors in deciding whether a termination of parental rights is warranted. *See In re Frances*, 505 A.2d 1380, 1385 (R.I.1986). In this case, the trial justice did not terminate the father's parental rights solely because of his incarceration. The termination also was based upon other factors, including the probable duration of his incarceration, the father's long-standing history of substance abuse, his failure to follow through with recommended services, and the fact that his parental rights to another child also had been terminated. Moreover, despite the father's assertions, the department did make reasonable efforts to strengthen and encourage the relationship between parent and child. A review of the record in this case supports the trial justice's findings that the department developed numerous case plans and made referrals for respondent to address those issues which led to Micaela's placement. But the father's refusal to cooperate repeatedly undermined these efforts.

■ The father also contends that the trial justice erred in terminating his parental rights based upon the fact that his parental rights to another child previously had been terminated, pursuant to § 15–7–7(a)(2)(iv). He claims that this section does not apply here because Micaela was placed with her maternal grandmother, as opposed to being placed in state care. He suggests that because Micaela was not living with him, and therefore, was not removed from his care, this section does not apply to him.

■ Section 15–7–7(a)(2)(iv) provides that a parent's rights may be terminated if "[t]he child has been placed with the department for children, youth, and families and the court has previously terminated parental rights to another child who is a member of the same family and the parent continues to lack the ability or willingness to respond to services which would rehabilitate the parent and provided further that the court finds it is improbable that an additional period of services would result in reunification within a reasonable period of time considering the child's age and the need for a permanent home."

Although the father's argument is creative, it belies the intent of the statute. Micaela was *placed* with the department at the time this petition was filed, although DCYF allowed her grandmother to have custody of her temporarily. There is no requirement in the statute that a child be removed from a parent's home or relatives in these circumstances. The only other condition precedent to the applicability of the above-quoted section is that the parent previously shall have been proven to be unfit to parent a child. *See In re Kyle S.,*

692 A.2d 329, 332–33 (R.I.1997). In this case, the father was previously proven to be unfit as to another one of his children; therefore, this section was properly applied to the father. In most cases involving the termination of parental rights, the court must find by clear and convincing evidence that DCYF has made reasonable efforts to reunify parent and child, and that, notwithstanding those efforts, the parent is unfit. *See In re Ryan S.,* 728 A.2d 454, 457 (R.I.1999). In this case, however, when DCYF sought termination under § 15–7–7(a)(2)(iv), no such reasonable-efforts requirement applied.

 It is well settled that the findings of a trial justice sitting without a jury are entitled to great weight and will not be disturbed by this Court on appeal unless they are clearly wrong or unless the trial justice misconceived or overlooked material evidence. *See In re Kristen B.,* 558 A.2d 200, 204 (R.I.1989). Specifically, when reviewing cases involving the termination of parental rights, a trial justice's decision will be affirmed by this Court if we determine that legally competent evidence exists in the record to support the finding. *See In re Jennifer R.,* 667 A.2d 535, 536 (R.I.1995). In this case, there was evidence that Micaela had never resided with the father and that he had never parented her. He did not comply with DCYF's treatment plan or meet its objectives. Moreover, given the likely duration of his incarceration, it is improbable that he will be able to care for or meet the needs of this child for a long period of time. Therefore, the trial justice was not clearly wrong in terminating the father's parental rights.

Based upon the foregoing, we deny the appeal of the father in this case, and affirm the decree terminating his parental rights.

The case file shall be remanded to the Family Court.