**In re SHAYLON J.**

**No. 2000–220–Appeal.**

Supreme Court of Rhode Island.

Nov. 1, 2001.

Janice M. Weisfeld, Providence, for Plaintiff.

Frank P. Iacono, Jr., John E. Farley, Providence, Thomas J. Corigan, Jr., for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent-father, Bryant Brown (father), appeals from a Family Court de-cree terminating his parental rights to his daughter, Shaylon J., born October 4, 1994. Previously, the court had terminated the parental rights of Shaylon's mother by a default judgment. Only the father, however, has appealed the Family Court judgment. A single justice of this Court ordered the parties to show cause why we should not decide this case summarily. After considering the parties' written and oral submissions, we conclude that no cause has been shown and proceed to decide the appeal at this time. For the reasons indicated below, we affirm.

Shaylon was committed to the care, custody, and control of the Department of Children, Youth, and Families (DCYF or department) on September 4, 1998, after the father admitted to neglect. On March 16, 1999, the department filed a termination of parental rights petition in which it alleged that the father was unfit because of (1) his incarcerated status; (2) chronic substance abuse, and (3) that the child had been in the custody of the department for at least twelve months.

Shaylon and her siblings (the latter are not the father's children and are not the subjects of this appeal) first came into the department's care in July 1997 because of the mother's substance-abuse problems. On September 30, 1997, the mother failed to appear in court, which then found Shaylon to be neglected by her mother and committed her to the care, custody, and control of DCYF. At that time, Shaylon's father had not yet been identified. Later, however, on January 12, 1998, the father, who was incarcerated at the Adult Correctional Institutions (ACI), appeared, entered a denial, and questioned his paternity.[1] The court ordered paternity tests,

---

1. In January 1998, the father was imprisoned at the ACI, awaiting trial on two counts of burglary. Later, he was convicted and sentenced to fifteen years to serve. During the

which confirmed that respondent was indeed Shaylon's biological father. Thereafter, the father admitted to neglect and, in response, on September 4, 1998, the court committed Shaylon to the care, custody, and control of the department.

In a bench decision the trial justice found that the department had proved by clear and convincing evidence that Shaylon had been in the care of DCYF for at least twelve months. He found that no substantial probability existed that the child would be able to return to her father's care within a reasonable period. Because of the father's incarceration, the court also found that the department had no control over providing various social services to the father at the ACI. Nevertheless, the court found that such services were available to the father at the ACI, if he had chosen to avail himself of them. Thus, the court concluded, the department had fulfilled its legal obligations in this regard. The court found the father to be an unfit parent based upon his inability to care for the child because of the likely duration of his future incarceration. The trial justice, however, granted the father's motion to dismiss the allegation of chronic substance abuse. The court also decided that it was in Shaylon's best interest to terminate the father's parental rights. The trial justice eventually granted the petition and terminated the father's parental rights.

■ The father challenges several of the trial justice's findings. He argues that the trial justice erred in finding it improbable that he could "care for" his child for an extended period as provided for in G.L. 1956 § 15–7–7(a)(2)(i). The father contends that the trial justice applied a restrictive definition of the term "to care for" in making his findings. He suggests that the court erroneously focused on his finan-

cial inability to support the child in concluding that he could not care for her. Moreover, the father asserts, he had much to offer Shaylon in the way of attention and love, all of which he could have provided with the assistance of his own mother. But the suggested availability of a relative other than a parent (here, the father's mother) to assist in caring for a child does not meet the statutory standard that speaks in terms of parental care.

Section 15–7–7(a)(2)(i) says:

"The parent is unfit by reason of conduct or conditions seriously detrimental to the child, such as, but not limited to, the following:

(i) Institutionalization of the parent, including imprisonment, of such a duration that renders it improbable for the parent to care for the child for an extended period of time."

■ Contrary to the father's assertion, the trial justice did not focus solely on his financial status in finding that he would be unable to care for Shaylon within a reasonable period. In this case, ample evidence supported the finding that the father would be unable to care for his child for an extended period. The father was incarcerated for most of the time that the department cared for Shaylon. Moreover, the father was sentenced to serve until 2012 and was not eligible for parole until at least 2002. There also was evidence that the father had experienced difficulty in relating to his daughter, which was apparent during their uncomfortable visits together at the prison. This evidence demonstrated that the father had not established a positive relationship with his child and, given the likely length of his future incarceration, he would not be in a position to care for the child for an ex-

termination-of-parental-rights trial, the father's conviction was on appeal to this Court.

Eventually, we affirmed the conviction. *See State v. Brown*, 748 A.2d 244 (R.I.2000).

tended period. Given these circumstances, the trial justice properly found that prolonged foster care was not in the child's best interest.

■ The father also asserts that the trial justice erred in finding that the department made reasonable efforts to reunite him with his daughter. He argues that it failed to consult with him in developing a case plan. He describes the department's efforts in providing for just a handful of visits with his daughter as "woefully inadequate." He also suggests that the department failed to assist him with obtaining various social services at the ACI. He contends that the department failed in its mandate to encourage and strengthen the parent-child relationship.

■ In accordance with § 15-7-7(b)(1), the department is required to make reasonable efforts to reunify the family before granting a termination petition. The state must demonstrate that the department has: "(1) consulted and cooperated with the parents in developing a plan for appropriate services to be provided to the child and his or her family, (2) made suitable arrangements for visitation, (3) provided services and other assistance to the parent or parents to ensure that problems preventing discharge from foster care would be resolved or ameliorated, and (4) informed the parent or parents about the child's health, progress, and development." *In re Nathan F.*, 762 A.2d 1193, 1195 (R.I.2000) (quoting *In re Antonio G.*, 657 A.2d 1052, 1058 (R.I.1995)).

■ " 'Reasonable efforts' is a subjective standard subject to a case-by-case analysis, taking into account, among other things, the conduct and cooperation of the parents." *In re Nicole B.*, 703 A.2d 612, 618 (R.I.1997) (citing *In re Antonio G.*, 659 A.2d 672, 674 (R.I.1995)). Here, the father's request for paternity testing somewhat delayed the department's initial efforts in this case. The department had no obligation to create a case plan for the father until it established his paternity. Once it did so, however, it then developed a case plan in accordance with the department's mandate. In addition, the department developed a schedule for visitation between the father and Shaylon. Although the department's efforts were hampered by the father's incarceration and by his initial denial of paternity, we cannot conclude that its actions were unreasonable under the circumstances of this case. In addition, we recently stated in *In re Devone S.*, 777 A.2d 1268, 1272 (R.I.2001) (per curiam), that it is "the parent, not DCYF, whose children are in the care of an authorized agency [who] is responsible to substantially and repeatedly maintain contact with the children."

For these reasons, we hold that the trial justice did not err in granting the termination petition based upon § 15-7-7(a)(2)(i). Thus, we have no need to address the father's other claims of error. In conclusion, we deny the respondent's appeal and affirm the judgment of the Family Court terminating the father's parental rights.