**In re FAITH H.**

**No. 2001–524–Appeal.**

Supreme Court of Rhode Island.

Jan. 7, 2003.

Catherine A. Gibran, Paula Rosin, Providence, for Plaintiff.

Frank P. Iacono, Jr./Thomas J. Corrigan, Jr., Washington Crossing, PA, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent-father, Leo Hopkins, has appealed a Family Court decree terminating his parental rights to his daughter, Faith, born January 2, 1999. The mother voluntarily consented to a direct-consent adoption by the child's maternal grandmother and is not a party to this appeal. Pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided, this case came before the Supreme Court for oral argument on December 3, 2002. After considering the record and the arguments and memoranda of the parties, we conclude that cause has not been shown and proceed to affirm the decree of the Family Court.

Faith came into the care of the Department of Children, Youth and Families (DCYF or department) shortly after her birth on January 2, 1999. On the day Faith was born, a physician's report of examination was filed, reporting that the mother admitted to drug use during her pregnancy and that both the child and the mother had positive toxicology screens for cocaine and opiates. On April 4, 1999, Faith was committed to DCYF's care, custody, and control, after respondent admitted to dependency, and the mother admitted to neglect. The respondent was incarcerated at the time, as he had been since before his child's birth.

On June 8, 2000, the department filed a petition to terminate respondent's parental rights, arguing that termination was warranted because of three separate findings, any one of which alone would be sufficient to terminate his parental rights. Specifically, the department contended that respondent was unfit as a parent on account of his incarceration, his chronic substance abuse, and because the child had been in the custody of DCYF for more than twelve months, with no substantial probability that she could return to respondent's care within a reasonable period of time. These factors correspond to G.L.1956 § 15-7-7(a)(2)(i), (a)(2)(iii), and (a)(3), respectively. The Family Court justice conducted a hearing and, on February 22, 2001, entered a decree, accompanied by a written decision, that respondent's rights be terminated. The justice determined at the time that § 15-7-7(a)(3) was not applicable because respondent was incarcerated when the child was placed into DCYF's custody. Nevertheless, she granted the petition because she concluded that DCYF had met the statutory burdens for establishing unfitness due to respondent's incarceration and his chronic substance abuse.

Section 15-7-7(a) enumerates the findings of fact upon which the Family Court may find unfitness, in which case it shall "terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child * * *." The statute provides that the court must establish such facts by "clear and convincing evidence." *Id.* We uphold a Family Court's determination to terminate parental rights due to unfitness "[a]s long as the

record discloses the existence of legally competent evidence to support the finding, and the trial justice did not overlook or misconceive material evidence nor was he or she otherwise clearly wrong * * *." *In re Suebun V.*, 766 A.2d 939, 942 (R.I.2001) (per curiam).

■ Section 15–7–7(a)(2) provides that one of the findings that can lead to the termination of parental rights is that "[t]he parent is unfit by reason of conduct or conditions seriously detrimental to the child * * *." An example that would support a finding of unfitness is "[i]nstitutionalization of the parent, including imprisonment, of such a duration that renders it improbable for the parent to care for the child for an extended period of time * * *." Section 15–7–7(a)(2)(i). Although we have held that the fact of incarceration alone is not sufficient to terminate parental rights, we have allowed the Family Court to find imprisonment, combined with other factors, sufficient to establish the finding of unfitness under § 15–7–7(a)(2)(i). *In re Shaylon J.*, 782 A.2d 1140, 1142–43 (R.I.2001) (per curiam); *In re Micaela C.*, 769 A.2d 600, 604 (R.I.2001) (per curiam); *In re Frances*, 505 A.2d 1380, 1385 (R.I.1986). Such factors can include "the probable duration of * * * incarceration." *In re Micaela C.*, 769 A.2d at 604. In calculating the period of incarceration, the justice may look to the total sentence, even if the parent is eligible for parole. *In re Mercedes V.*, 788 A.2d 1152, 1153 (R.I. 2001) (mem.); *In re Shaylon J.*, 782 A.2d at 1142.

■ It is our opinion that there was sufficient evidence in the record for the Family Court justice to find that respondent's incarceration was "of such a dura-

tion that renders it improbable for the parent to care for the child for an extended period of time," one of the factors enumerated in § 15–7–7(a)(2)(i). Before the child was born, respondent was incarcerated to a sentence of ten years, with thirty-three months to serve and eighty-seven months suspended, with probation. He never has had custody of Faith. Further, the child requires special care, including medication and regular visits to the doctors, and the Family Court justice found it "unrefuted" that she "is very bonded to [the] grandmother," who has provided that special care, and that Faith "feels safe" and "is loved" there. Moreover, subsequent to the Family Court justice's decision to terminate parental rights and after respondent's release from incarceration, it was disclosed at oral argument and confirmed in Superior Court records that respondent pleaded nolo contendere to additional criminal charges for which he was sentenced to a total of ten years imprisonment, six years to serve, four years suspended with probation, retroactive to February 5, 2002, setting his current date of release in December 2007.[1]

■ We agree that sufficient evidence was presented to support the finding that respondent was unfit, notwithstanding that the Family Court justice erred in finding that respondent was a chronic drug abuser. The respondent's substance abuse evaluation at the Adult Correctional Institutions was never presented in the Family Court proceeding, and the record is devoid of evidence upon which the justice could have relied to support a finding of chronic substance abuse. However, based on the other evidence on the record, we affirm the finding of unfitness under § 15–7–7(a)(2)(i). *See Gross v. State Division of*

---

1. Further, at oral argument, it was disclosed that respondent had not seen Faith since late in 2000.

*Taxation,* 659 A.2d 670, 672 (R.I.1995) (per curiam) (holding that this Court may affirm a judgment for reasons other than those relied upon by the trial justice).

■ We further note that the Family Court justice erred in failing to consider whether the record contained facts to support termination of respondent's parental rights under § 15–7–7(a)(3). The justice found that this subsection applied to the mother in this case, but not the father, because he was incarcerated when the child was taken into DCYF custody. The statute provides no basis for this distinction. Moreover, this Court has applied § 15–7–7(a)(3) to terminate a father's parental rights when the father was in prison and the mother was not. *In re Antonio G.,* 659 A.2d 672 (R.I.1995).

Here, it is undisputed that the child was in the care of DCYF for more than twelve months, a prerequisite for a finding to terminate parental rights under § 15–7–7(a)(3). Accordingly, in terminating respondent's parental rights, the Family Court justice could have relied on § 15–7–7(a)(3) to determine that there was "not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time, considering the child's age and the need for a permanent home * * *."

In summary, we deny the respondent's appeal and, notwithstanding error in its reasoning, affirm the Family Court's decree terminating his parental rights.

Justice LEDERBERG participated in all proceedings but deceased prior to the filing of this opinion.