In re ROBERT S. et al.

No. 2001–456–Appeal.

Supreme Court of Rhode Island.

Feb. 11, 2004.

Thomas J. Corrigan, Jr., for DCYF, Plaintiff and Frank P. Iacono, Jr., for CASA, Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and FLAHERTY, JJ.

## OPINION

PER CURIAM.

The respondent-father, Sylvester Cyler (respondent), appeals from a Family Court decree terminating his parental rights to two of his children, Robert and Rashad S. This case came before the Supreme Court for oral argument on December 1, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be decided summarily. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and pro-ceed to decide the appeal at this time. For the reasons indicated herein, we af-firm the Family Court decree.

## I
### Facts and Travel

The unfortunate state of Robert and Rashad's family life has been the subject of Family Court litigation since 1997. In July 1997, the Department of Children, Youth and Families (DCYF) filed a peti-tion in the Family Court alleging that both respondent and the children's mother had neglected the children by abandonment.[1] The petition later was amended to include allegations of dependency. The Family Court ordered DCYF to remove the chil-dren from their mother's home and place them in the home of their maternal grand-mother. In April 1998, DCYF moved the children from their maternal grandmoth-er's home to their paternal grandmother's home as a result of respondent's complaint that the children were not receiving proper care. It should be noted that the children never have lived with respondent. In Au-gust 1998, a Family Court justice entered a bench decision finding that the children were dependent. The respondent appeal-ed that decision.

While that appeal was pending, DCYF petitioned the Family Court to terminate respondent's parental rights pursuant to G.L.1956 § 15-7-7(a)(3).[2] A hearing on

---

1. The parental rights of the children's mother were terminated in a decree dated July 27, 2000. No appeal was taken from that decree and it is not an issue in this appeal.

2. General Laws 1956 § 15-7-7(a) provides:
   "The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:
   * * *
   (3) The child has been placed in the legal custody or care of the department for chil-dren, youth, and families for at least twelve (12) months, and the parents were offered or received services to correct the situation which led to the child being placed; provid-ed, that there is not a substantial probabili-ty that the child will be able to return safely to the parents' care within a reasonable

DCYF's termination petition (TPR hearing or hearing) was scheduled for March 1, 2000, but, when respondent failed to appear, the court entered a default against him and scheduled a new hearing for March 15, 2000. The respondent's attorney from the dependency hearing was in court on March 1, 2000, and he assured the court that respondent would be notified of the new hearing date. However, respondent again failed to appear on March 15, 2000, and the matter was continued until April 12, 2000. On April 12, 2000, respondent again failed to appear before the Family Court, and the hearing was continued to April 26, 2000. On April 26, 2000, the respondent yet again failed to appear but, nevertheless, the Family Court justice proceeded with the hearing and Joyce Aylward (Ms. Aylward), the DCYF social worker assigned to the children's case, testified.

Ms. Aylward testified that she had offered respondent two case plans that, if followed, would assist him in maintaining his parental rights. Both plans required that respondent participate in state-funded parental aide services at the Providence Learning Center. In addition, the respondent was expected to assist and support his sons in seeking treatment for their behavioral problems,[3] provide adequate financial and emotional support for the children, refrain from criminal behavior, arrange for visitation with the children and see to their overall safety. Ms. Aylward testified that respondent failed to comply with either of the case plans.

According to Ms. Aylward's testimony, respondent said that the children could not live with him because he had a new family and there was no room for Robert and Rashad. The respondent maintained that it would be better for him to visit the boys where they were staying, at his mother's house, rather than inviting them to his home, even for a short visit. As for respondent's failure to participate in parental aide services, apparently respondent did participate at one time but then refused to return to the program as required by the case plans. Ms. Aylward testified that respondent had expressed to her that he wanted to ensure that the children could continue to live with his mother, but he did not know how to go about that because he did not understand the process.

After Ms. Aylward testified, the Family Court justice terminated respondent's parental rights but continued the matter for review until after this Court had issued a decision on the dependency appeal. In December 2000, we issued an opinion affirming the Family Court's decision. *In re Robert S.*, 762 A.2d 1199 (R.I.2000) (per curiam). We concluded "from the trial record that the respondent's virtual abandonment of his children from the day of their births made them 'dependent' children under [G.L.1956] § 14–1–3(6)." *In re Robert S.*, 762 A.2d at 1201. The respondent then, for the first time, appealed the Family Court justice's decision to terminate his parental rights. In an order dated October 16, 2002, however, we remanded the case to the Family Court because the Family Court justice inadvertently had failed to make a specific finding that respondent was an unfit parent. On December 9, 2002, the Family Court justice decreed that respondent was an unfit parent, thus terminating his parental rights to the

period of time considering the child's age and the need for a permanent home."

**3.** One of the boys was attending the Spurwink School to address some of his behavioral problems. The other child was involved in psychiatric counseling because of respondent's observation that he exhibited inappropriate sexual behavior.

children. The appeal is now properly before us.

## II

### Termination of Parental Rights

■ It is well established that when reviewing termination of parental rights cases, "we examine the record to determine whether any legally competent evidence exists to support the trial justice's findings" because such findings "are entitled to great weight and shall not be disturbed unless [they] are clearly wrong or unless the trial justice overlooked or misconceived material evidence." *In re Chaselle S.*, 798 A.2d 892, 895 (R.I.2002) (per curiam) (quoting *In re Kelly S.*, 715 A.2d 1283, 1288 (R.I.1998)).

The respondent argues on appeal that the Family Court justice erred in terminating his parental rights because DCYF did not demonstrate that he was an unfit parent or that termination was in the best interest of the children. *See In re Kyle S.*, 692 A.2d 329, 333 (R.I.1997) (noting that a "judicial finding of parental unfitness is a condition precedent to the involuntary termination of parental rights" and once that determination has been made, the children's best interest must be given the most weight). Pursuant to § 15–7–7(a)(3),[4] termination is appropriate if clear and convincing evidence establishes that: (1) the child has been in DCYF custody for at least one year; (2) the parents have been offered, or received, assistance in correcting the situation; and (3) considering the children's needs and age, there is not a substantial likelihood that the chil-

dren will be returned to the parents within a reasonable amount of time.

■ There was clear and convincing evidence in the record to support the Family Court justice's finding that respondent was an unfit father to Robert and Rashad based on his overall lack of interest in the children. As Ms. Aylward testified, two case plans were created specifically for respondent to prevent the termination of his parental rights, yet respondent failed to comply with either plan. In addition, respondent had not provided an appropriate place to reunite with the children, insisting that he would prefer to continue visiting the children at his mother's house rather than make room for them at his own home. During the entire proceeding, respondent never once indicated that he wanted the children to reside with him. To the contrary, he had indicated that it was inconvenient to have the children live with him because he and his girlfriend had just had another baby and Robert and Rashad would disrupt his new family. The Family Court justice noted that respondent had not visited the children overnight in the two years that Ms. Aylward had been working with the family. Furthermore, respondent did not cooperate with DCYF's recommendation that he receive additional parental aide services. It was clear to the Family Court justice, and it is clear to us, that respondent had no interest in his children and had no interest in being reunited with them.

The respondent contends that it is improper to find a parent unfit just because he does not live with his children. This

---

4. We note that respondent's rights may also have been terminated pursuant to § 15–7–7(a)(4), which allows termination of parental rights if "[t]he parent has abandoned or deserted the child. A lack of communication or contact with the child for at least a six (6) month period shall constitute prima facie evi-

dence of abandonment or desertion * * *." When the Family Court justice asked whether respondent had abandoned his children, however, DCYF said that it withdrew that allegation and then proceeded under § 15–7–7(a)(3).

argument fails for many reasons. First, as previously discussed, the Family Court justice did not base his entire decision on the fact that respondent did not live with his children. Second, the respondent has never resided with, or made efforts to reside with, the children. This lack of interest is far more telling of his fitness than the mere fact that the children have a different address. Finally, in a TPR case brought under § 15–7–7(a)(2)(i),[5] we held that an incarcerated father's suggestion that the "availability of a relative other than a parent * * * to assist in caring for a child does not meet the statutory standard that speaks in terms of parental care." *In re Shaylon J.*, 782 A.2d 1140, 1142 (R.I.2001) (per curiam). We conclude that *In re Shaylon J.*, although not directly on point, does assist in explaining why respondent's argument fails. The respondent cannot rely on the care given by his mother, at her home, to substitute for his own parental obligations. *Id.*

■ The respondent next argues that Ms. Aylward failed to provide the court with an explanation for why the additional parental aide services, in which respondent refused to participate, were necessary. The respondent contends, therefore, that the Family Court justice erred in finding respondent unfit based on his failure to cooperate with DCYF. We conclude that it was not necessary for Ms. Aylward to provide an explanation at the trial. The reason behind the need for additional parental aide services is immaterial. The DCYF need show only that "the parents were offered or received services to correct the situation which led to the child being placed." Section 15–7–7(a)(3). Ms. Aylward testified that respondent had worked with a parental aide at one time, but that when additional services were recommended, he would not cooperate. That is sufficient to uphold the Family Court justice's decision that respondent was unfit because he would not cooperate with DCYF.

Even if Ms. Aylward's description of the need for parental aide services were not sufficient, respondent had ample opportunity to challenge the significance of the proffered services at the TPR hearing. The respondent knew that the Family Court justice would hear testimony at the hearing, but he chose not to appear to confront the state's only witness. Had he chosen to attend, respondent could have asked Ms. Aylward on cross-examination why she recommended additional parental aide services, or at least brought the lack of an explanation to the Family Court justice's attention at that time. A lawyer representing respondent was present at the hearing but he did not cross-examine Ms. Aylward on this or any other matter. For these reasons, we conclude that respondent's argument that the Family Court justice incorrectly relied on Ms. Aylward's recommendation is unpersuasive.

■ Finally, respondent argues that the Family Court justice erred by failing to determine whether respondent had been supporting his children financially. The respondent admits that it was determined at the dependency hearing that he had not been supporting his children financially, but complains that the issue was not revisited at the TPR hearing.[6] Nothing in

---

5. Section 15–7–7(a)(2)(i) provides:
   "The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following: (i) Institutionalization of the parent, including imprisonment, for a duration as to render it improbable for the parent to care for the child for an extended period of time."

6. We note that on appeal respondent has not argued that he has been supporting the chil-

§ 15–7–7(a)(3), however, requires a showing of financial contribution or lack thereof. Thus, the Family Court justice did not err in failing to make a determination about respondent's financial support.

■ For the above reasons, it is clearly in the children's best interest to have respondent's parental rights terminated. We have held "that a determination of the best interests of a child encompasses 'the right of a minor child to reasonable care and maintenance, freedom from abuse or neglect, and the right to be given an opportunity to spend the remainder of his or her childhood in a family setting in which the child may grow and thrive.'" *In re Natasha M.*, 800 A.2d 430, 431 (R.I.2002) (mem.) (quoting *In re Stephanie*, 456 A.2d 268, 271 (R.I.1983)). The respondent never tried to incorporate Robert and Rashad into the "family setting" he created with his new girlfriend. *Id.* He did not complete the case plans that would have ensured that his children would be provided with the "reasonable care and maintenance" they deserve. *Id.* The respondent

has never provided stability in the children's lives nor has he demonstrated that he has the best interests of his children at heart.

We conclude that there is sufficient evidence to support the Family Court justice's findings that the respondent is an unfit parent, and that the termination of his parental rights is in the best interest of Robert and Rashad.

### Conclusion

For the reasons stated herein, we affirm the decree of the Family Court. The record shall be remanded to the Family Court.

Justice SUTTELL did not participate.

dren financially, just that DCYF did not present evidence of his failure to support.