**In re ALVIA K.**

**No. 2005–306–A.**

Supreme Court of Rhode Island.

Nov. 14, 2006.

Charles Greenwood, Esq., Providence, for petitioner.

Karen Clark, Esq., Providence, for DCYF.

Frank P. Iacono, Jr., Esq., for CASA.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The respondent, Frederick K. (respondent), appeals a judgment of the Family Court terminating his parental rights as to his daughter, Alvia. Alvia's mother voluntarily consented to an open adoption agreement and is not a party to this appeal. This case came before the Supreme Court for oral argument on October 4, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the record and the memoranda that the parties filed, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Family Court.

## I

### Facts and Travel

Alvia, respondent's child, was born on March 19, 2004, at Hasbro Children's Hospital in Providence. After her birth, the hospital immediately placed her on a seventy-two-hour hold, which was issued, in part, because Alvia's mother had her parental rights terminated as to four previous children. The Department of Children, Youth and Families (DCYF) removed Alvia from the hospital on March 22, 2004, and later placed her in the pre-adoptive home where she currently resides.

The respondent testified that he visited Alvia at the hospital daily until he was arrested on March 22, 2004, on a fugitive warrant from New Jersey. However, the trial justice found that respondent visited Alvia only once after she was born.

At the time of Alvia's birth, respondent was on probation in New Jersey for the crimes of resisting arrest and burglary, for which he initially was incarcerated in 2001. A warrant was issued for respondent's arrest in 2004 based on ten new charges, including kidnapping, sexual assault, interference with the custody of a child, and endangering the welfare of a child. After his arrest on this warrant in Rhode Island, respondent was incarcerated at the Adult Correctional Institutions (ACI) for approximately one month. He was extradited to New Jersey on April 22, 2004, and was held at the Camden County Correctional Facility (CCCF) while awaiting trial on the new charges and his violation of probation hearing.

On October 22, 2004, respondent was found to be in violation of his probation stemming from his 2001 New Jersey convictions, and his original sentence was reinstated: three years incarceration for burglary and twelve months incarceration for resisting arrest, both to run concurrently with credit for time served. On the same day, respondent pled guilty in New Jersey Superior Court to one count of interference with the custody of a child in the third degree and was sentenced to three years to serve, consecutive to his reinstated three-year sentence. After sentencing, respondent was transferred to Riverfront State Prison where he currently is serving this six-year sentence that, according to respondent, runs until 2010.

During his time at the ACI, DCYF social caseworker Kelly Mainor visited respondent to discuss the goal of reunification and a proposed case plan. Ms. Mainor took respondent's social history during her visit and, utilizing that information, delineated three tasks to be included in respondent's case plan: (1) attend parenting classes; (2) undergo a substance abuse evaluation; and (3) undergo a mental health evaluation. Although a written case plan never was presented to or signed by respondent, he orally agreed to participate in the suggested programs during Ms. Mainor's visit. A DCYF supervisor approved a written case plan on June 11, 2004. Due to scheduling conflicts, Ms. Mainor was unable to provide respondent with any services or a visit with Alvia prior to his extradition to New Jersey one month later.

According to respondent, he attempted to contact Ms. Mainor on two separate occasions from CCCF within a month of his extradition to New Jersey by placing collect calls to the number she provided, but neither call was successful.[1] These two purported phone calls were respondent's only attempts at contacting anyone at DCYF.

Ms. Mainor spoke with a social worker at CCCF and attempted to implement respondent's case plan in New Jersey, but learned that the facility did not offer programs appropriate to respondent's needs. Her only contact with respondent during his time at CCCF was by letter sent September 15, 2004. In this letter, Ms. Mainor informed respondent that Alvia's mother had decided to voluntarily terminate her rights to Alvia and planned to

---

1. At trial, a dispute arose regarding the ability of a CCCF inmate to make a collect telephone call and leave a voice mail message. The respondent claimed that the procedure for placing a collect call at CCCF required that an operator place the call and the person on the receiving end of the call press "1" to accept the charges, therefore making it impossible for respondent to leave a voice mail message. Ms. Mainor testified that she was working with another inmate who was able to get through to her voice mail and leave a message. However, Ms. Mainor noted that this inmate was incarcerated in Rhode Island, not New Jersey, and she was unsure how he was able to connect with her voice mail.

consent to an open adoption by the child's foster parents. The letter requested that respondent call Ms. Mainor to discuss his intentions and the jail time and charges he was facing. In her letter, Ms. Mainor again provided respondent with her phone number and indicated that she would be able to accept collect calls. The respondent did not attempt to contact Ms. Mainor after receiving the September 15 letter, nor did he make any attempts to contact Alvia or provide her with gifts or support of any type while incarcerated.

On October 7, 2004, DCYF filed a petition for termination of respondent's parental rights (TPR), with respect to Alvia, and a trial was held in April 2005. The petition alleged (1) that respondent had abandoned or deserted Alvia and (2) that respondent was unfit by reason of imprisonment of such duration as to render it improbable for respondent to care for his child for an extended period of time. On May 9, 2005, the trial justice issued a written decision granting the petition as to the second allegation, but found that the state had failed to meet its burden of proof on abandonment. The respondent timely filed a notice of appeal to this Court.

## II

## Analysis

The respondent raises three assignments of error in advocating for reversal of the Family Court decree: (1) the trial justice erroneously relied on respondent's incarceration as the basis for finding him unfit under G.L.1956 § 15–7–7(a)(2)(i); (2) the trial justice erroneously found that DCYF made reasonable efforts to reunify respondent with his child; and (3) the evidence presented at trial was insufficient for the trial justice to find that terminating respondent's parental rights was in his child's best interests.[2]

---

2. Alvia's guardian ad litem (guardian) offered a fourth argument in his prebriefing statement, alleging that the trial justice's rationale for finding that the state failed to meet its burden on the abandonment allegation was clear error; however, neither DCYF nor Alvia's guardian filed a cross-appeal on the issue.

In his decision, the trial justice defined abandonment by citing New Jersey Supreme Court case law, which states that a finding of abandonment requires a showing that "a parent has willfully forsaken obligations," and has "engaged in a course of conduct that 'evidences a settled purpose to [forgo] all parental duties and relinquish all parental claims to the child.' " *In re Adoption of Children by L.A.S.,* 134 N.J. 127, 631 A.2d 928, 932 (1993). Based on this standard, the trial justice in the present case found that DCYF failed to present sufficient evidence to support a finding of abandonment.

This Court has specifically rejected the notion that abandonment requires proof of willfulness. *In re Abby D.,* 839 A.2d 1222, 1225 (R.I.2004); *In re Craig G.,* 765 A.2d 1200, 1202 (R.I.2001). In addition, this Court has explicitly stated that a finding of abandonment does not require proof that the parent formed a " 'settled intention' " to abandon his or her child. *In re Damien M.,* 819 A.2d 213, 214 (R.I.2003) (mem.). Instead, in accordance with G.L.1956 § 15–7–7(a)(4), DCYF need only present evidence of a "lack of any meaningful contact between [parent and child] for a period of at least six months [to constitute] prima facie evidence of abandonment." *In re Damien M.,* 819 A.2d at 214. In cases when the parent is incarcerated, we have also held that " 'the parent, not DCYF, whose children are in the care of an authorized agency * * * is responsible to substantially and repeatedly maintain contact with the children,' even when the parent is incarcerated." *In re Shawn B.,* 864 A.2d 621, 623 (R.I.2005) (quoting *In re Diamond I,* 797 A.2d 1076, 1078 (R.I.2002) (mem.)).

Accordingly, the trial justice's definition of abandonment in this case was clearly erroneous. Nevertheless, the error was harmless in light of this Court's determination that DCYF sustained its burden under § 15–7–7(a)(2). *See In re Christopher B.,* 823 A.2d 301, 316 (R.I.2003).

## A

## Standard of Review

 "It is well settled that when reviewing a termination of parental rights decree, this Court examines the record to determine whether the findings of the trial justice are supported by legally competent evidence." *In re Shawn M.*, 898 A.2d 102, 106 (R.I.2006) (citing *In re Brianna D.*, 798 A.2d 413, 414 (R.I.2002)). The trial justice's findings are entitled to great weight and will not be disturbed by this Court absent a showing that the trial justice "overlooked or misconceived material evidence or was otherwise clearly wrong." *In re Marcella*, 834 A.2d 717, 718 (R.I. 2003) (citing *In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989)). With these principles in mind, we turn our attention to respondent's appeal.

## B

## Parental Unfitness

The respondent first contends that the trial justice erroneously relied upon his imprisonment as the basis for terminating his parental rights. We disagree.

 In order to protect a parent's fundamental liberty interest in the care and custody of his or her children, a finding of unfitness is the first necessary step before a decree terminating parental rights may issue. *In re Nicole B.*, 703 A.2d 612, 615 (R.I.1997). The state's allegations to support such a determination must be proven by clear and convincing evidence. *In re Christopher B.*, 823 A.2d 301, 307 (R.I. 2003). In the event that a parent is adjudicated unfit, "the balance shifts so that the 'best interests of the child outweigh all other considerations.'" *In re Nicole B.*, 703 A.2d at 615 (quoting *In re Kristen B.*, 558 A.2d at 203).

Authority for terminating parental rights based on unfitness is contained in § 15–7–7, which provides, in relevant part:

"(a) The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:

"* * *

"(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:

"(i) Institutionalization of the parent, including imprisonment, for a duration as to render it improbable for the parent to care for the child for an extended period of time."

 While this Court agrees with respondent that parental rights cannot be terminated solely on the basis of a parent's conviction of a crime and subsequent incarceration, the extended length of a parent's incarceration is, pursuant to § 15–7–7(a)(2)(i), in and of itself, grounds to terminate parental rights. *See In re Amber P.*, 877 A.2d 608, 615–16 (R.I.2005); *In re Faith H.*, 813 A.2d 55, 57 (R.I.2003). In such cases, "the trial justice is not required to consider parole eligibility[;] he or she is only required to consider the probable duration of imprisonment at the time of the termination." *In re Isabella C.*, 852 A.2d 550, 558 (R.I.2004) (quoting *In re Mercedes V.*, 788 A.2d 1152, 1153 (R.I. 2001) (mem.)).

 We conclude that there was sufficient evidence on the record for the trial justice to find that respondent's incarceration was of such a duration as to render it

improbable for him to care for his child for an extended period of time. At the time of the termination hearing, respondent had been incarcerated continuously since Alvia was three days old, having served nearly six months of a six-year sentence that runs until 2010. Alvia will be six years old upon respondent's release if he completes his full sentence. Given the probable duration of respondent's incarceration in New Jersey, we are satisfied that there is sufficient evidence in the record to support the trial justice's finding of unfitness by clear and convincing evidence.

## C

### Reasonable Efforts

The respondent next argues that the trial justice erred in finding that DCYF made reasonable efforts toward reunification. Specifically, respondent contends that the requirements included in respondent's case plan were without support from evidence or respondent's history and that the DCYF social worker assigned to his case was inexperienced, failed to seek counsel from a more experienced caseworker, and did little or nothing to reunite him with his daughter. We find respondent's arguments to be without merit.

■ When a petition to terminate parental rights is filed pursuant to § 15–7–7(a)(2)(i), DCYF must prove by "clear and convincing evidence that regardless of the parent's behavior, [DCYF] has made reasonable efforts to encourage and strengthen the parental relationship" before a parent's rights can be terminated. *In re Amber P.*, 877 A.2d at 618; *see also* § 15–7–7(b)(1). "[T]he concept of reasonable

efforts is not a rigid standard, but one of some flexibility that must 'be defined by the particular facts and circumstances in a case.'" *In re Amber P.*, 877 A.2d at 618 (quoting *In re Alan W.*, 665 A.2d 877, 878 (R.I.1995)). Moreover, we apply the same deferential standard of review to the findings of the trial justice concerning reasonable efforts as we apply to findings of unfitness under § 15–7–7(a)(2), and, therefore, we will not disturb such factual determinations unless the trial justice overlooked or misconceived material evidence or was clearly wrong. *In re Antonio G.*, 659 A.2d 672, 673 (R.I.1995).

■ Here, Ms. Mainor testified that she met with respondent at the ACI to discuss the goal of reunification and the tasks that would be included in respondent's case plan. The respondent testified that he *agreed* to participate in the programs Ms. Mainor suggested during their meeting. Ms. Mainor provided testimony at trial explaining why she believed each element of the case plan was appropriate for respondent.[3] In addition, her DCYF supervisor approved the case plan.

Once Ms. Mainor learned that respondent was extradited to New Jersey, she attempted to implement his case plan in that state, but the necessary programs were not available. She sent a letter to respondent on September 15, 2004, requesting that respondent contact her to discuss his intentions with respect to Alvia, but respondent chose not to contact her.

After considering the foregoing, the trial justice found evidence that DCYF had made reasonable efforts toward reunifica-

---

**3.** Ms. Mainor testified that a substance abuse evaluation was necessary to document respondent's assertion that he did not have a history of substance abuse. She also testified that respondent made comments during their meeting that he was distant and did not like

looking at people. Those comments, combined with respondent's criminal history, indicated a need for a mental health evaluation. She also testified that she recommended parenting classes because respondent had been accused of kidnapping his other children.

tion. After reviewing the record, we are satisfied that the trial justice's finding is supported by legally competent evidence.

## D

### Alvia's Best Interests

The respondent lastly contends that the trial justice erred in finding that the termination of respondent's rights was in Alvia's best interests, in part because his determination that Alvia was substantially better off being adopted was "entirely speculative." We cannot agree with respondent's contentions.

■ The termination of parental rights is a tragic event. *In re David L.*, 877 A.2d 667, 673 (R.I.2005). Nevertheless, once unfitness is established, the primary focus no longer is on the parent, but on the child's best interests. *In re Kristen B.*, 558 A.2d at 203. "An analysis of the best interests of the child encompasses 'the right of a minor child to reasonable care and maintenance, freedom from abuse or neglect, and the right to be given an opportunity to spend the remainder of his or her childhood in a family setting in which the child may grow and thrive.'" *In re Mariah M.*, 899 A.2d 423, 427 (R.I.2006) (quoting *In re Robert S.*, 840 A.2d 1146, 1151 (R.I.2004)). Children should not be made to wait an indeterminate period for their parents "to provide them with a safe and stable environment." *In re Douglas F.*, 840 A.2d 1087, 1089 (R.I.2003); *In re Eric K.*, 756 A.2d 769, 772–73 (R.I.2000).

■ At the time of trial, Alvia was thirteen months old and had not seen or heard from her father since she was, at most, three days old. Alvia may be as old as six when the respondent finally is released from prison. The respondent testified that, from the time of his arrest, he had not provided even minimal support, given any gifts, or made even the most basic and rudimentary plans for Alvia's future. Evidence was presented that Alvia currently resides in a preadoptive foster home and has bonded with her foster parents. In light of the ample evidence presented to the trial justice, we conclude that the trial justice was not clearly wrong in finding that terminating the respondent's parental rights was in Alvia's best interests.

## Conclusion

For the foregoing reasons, the judgment terminating the respondent's parental rights entered in the Family Court is affirmed. The papers in this case are remanded to the Family Court.