**In re ERIC K. et al.**

**No. 98–447–Appeal.**

Supreme Court of Rhode Island.

Aug. 2, 2000.

Thomas J. Corrigan, for plaintiff.

Kelly Monteiro, Paula Rosin, Providence, for defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

# OPINION

PER CURIAM.

This case came before the Supreme Court in Washington County on May 3, 2000, pursuant to an order directing the respondent-mother to appear and show cause why the issues raised in this appeal should not be summarily decided. The respondent, Gloria Komrowski (Gloria), has appealed from a Family Court decree terminating her parental rights to three of her children, Eric, Chalena and Shique.[1] After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Therefore, the appeal will be decided at this time.

The facts of this case reveal a mother with a chronic substance abuse problem who continually demonstrated an inability to engage in meaningful treatment. When she gave birth to Eric, her first child, on August 29, 1991, Gloria was a minor and under the care and custody of the Department of Children, Youth and Families (DCYF) as a result of drug use. Because Gloria admitted to having used cocaine during her pregnancy, Eric was placed in the temporary care and custody of DCYF soon after his birth. In an effort to address Gloria's substance abuse problem and lack of parenting skills, a DCYF social worker, Debra DePasquale–Bonner (Bonner), offered Gloria placement in a host of programs and agencies. Gloria selected the Junction Day Program (Junction), which was designed to provide treatment for drug abuse, in addition to counseling and urine screens. She also was referred to Mental Health Services of Cranston–Johnston for drug use and parenting issues. A case plan was developed by DCYF with the goal of reunification through the achievement of realistic objectives that included a requirement that Gloria strengthen her parenting skills and remain drug free. When Bonner transferred the case to the next case worker in November 1991, Gloria had not complied with the case plan.

Thereafter, Mary O'Connell McKenna (McKenna) of DCYF was assigned to Gloria's case and worked with her and her children for three years. Because Gloria's attendance at Junction was sporadic, McKenna encouraged her to enter a residential drug-treatment program. On February 5, 1992, Gloria admitted to a neglect petition, and Eric was committed to the care, custody and control of DCYF. Thereafter, Gloria was ordered to cooperate with an intensive day-treatment program for substance abuse. DCYF was directed to continue to make appropriate referrals for treatment and rehabilitation. In January 1992, Gloria was referred to the Good Hope Program (Good Hope) for treatment. According to McKenna, Good Hope entailed a month-long residential drug and alcohol treatment, that was to be followed up by aftercare. In addition, McKenna again referred Gloria to the Junction substance abuse program for day treatment. However, according to McKenna, Gloria never sought treatment at Good Hope and subsequently left the Junction program.

On September 4, 1992, one year after Eric's birth, Gloria, at age seventeen, gave birth to her second child, Chalena, whose father was a different man from Eric's. When it was learned that Gloria tested positive for "pot" during the pregnancy, Chalena was placed in temporary foster care. On December 18, 1992, the child was placed with Gloria on the condition that she remain in the Junction program and that she continue to provide clean urine screens. On February 4, 1993, Gloria admitted to dependency, and Chalena then was committed to the care and custody of DCYF, but remained with Gloria.

---

1. The parental rights of Adrian Butler and Eric Amado, putative fathers of Eric and Chalena, respectively, were terminated on December 6, 1996, and the parental rights of Ernest Briggs, father of Shique, were terminated on March 3, 1998. However, only Gloria has appealed.

Gloria was referred to Project Link at Women & Infant's Hospital in Providence for parenting classes and substance-abuse treatment.

Just over nine months after the birth of Chalena, Gloria gave birth to her third child, Shique, who was fathered by yet a different man. Shique was placed with her mother on the condition that Gloria cooperate with Project Link and with services provided by the Visiting Nurse Association (VNA). A nurse from VNA testified that initially Gloria resisted services, and after three months refused any further VNA services. The nurse also testified concerning the squalor of the home where Gloria and her children resided. In July 1993, Gloria enrolled in Project Link. But because of noncompliance and numerous relapses she was referred to a more intensive program at Junction. After testing positive for cocaine while at Junction, she was referred to Talbot Women's Day Treatment, where she remained drug-free for four and one-half months. She graduated from that program in October 1994. However, Gloria's achievement was short-lived because she tested positive for cocaine one month later.

Kathleen Boday (Boday) took over as DCYF social worker in 1993. Boday prepared a case plan, and again Gloria failed to comply with the services provided for her treatment. Specifically, Boday attempted to enroll her at Talbot Day Treatment and the Salvation Army, but Gloria failed to successfully complete either program. On July 6, 1995, DCYF removed all three children from Gloria's care. On January 6, 1996, Gloria gave birth to her fourth child, Shinekqua, who was born cocaine positive.

2. The petition regarding Gloria's fourth child, Shinekqua, was subsequently dismissed by the trial justice, and thus is not the subject of this appeal.

3. Besides the testimony of the DCYF workers, there also was testimony from various service providers, including a substance abuse coun-

On February 29, 1996, DCYF filed termination of parental rights petitions concerning all four of Gloria's children.[2] The petitions alleged that the children had been in the custody of DCYF for at least twelve months, that the parents had been offered or received services to correct the situation that led to the placement, and provided further that considering their age and need for a permanent home, there was not a substantial probability that the children would be able to return to the parents' care within a reasonable time.

The record discloses that two months before trial, Gloria was admitted into the SSTARbirth drug-treatment program with her fifth child, Mary. Pamela Dee (Dee), a counselor at the SSTARbirth program, testified that SSTARbirth is a one-year residential program that addresses substance abuse, household management, parenting issues and other life skills. In addition, the program includes weekly random urine screens. At the time of trial, all of Gloria's urine screens were clean. However, Dee testified that although it was possible for all five of Gloria's children to be placed with her at SSTARbirth, the children would have to be introduced sequentially into the program, followed by a ninety-day assessment period to evaluate how Gloria was coping with each child before another child could be admitted to the program.

A trial was held in December 1997 in Providence County Family Court. The trial justice, after hearing and considering the considerable testimony about Gloria's substance abuse and unwillingness to receive treatment,[3] found the allegations in the petitions to have been proven by clear and convincing evidence. Thereafter, Gloria filed this timely appeal.

selor, a substance abuse therapist, a provider of parent aid services, and workers from such agencies as Project Connect, Eastman House and SSTARbirth. In sum, their testimony further revealed Gloria's chronic failure to comply with the various services provided.

On appeal, Gloria argued that the trial justice erred in his interpretation of G.L. 1956 § 15–7–7(a)(2)(iii)[4] in finding that Gloria's prognosis for substance abuse recovery was questionable. Specifically, Gloria contended that the trial justice erroneously focused on her early history of substance abuse and failed to give full consideration to her recent progress. In addition, Gloria argued that the trial justice erred in terminating her rights because DCYF failed to demonstrate by clear and convincing evidence that there was no substantial probability that the children could be safely returned to Gloria's care within a reasonable period.

In reviewing cases involving termination of parental rights, this Court must examine the record to determine whether legally competent evidence exists to support the findings of the trial justice. *In re Lori Ann D.,* 666 A.2d 403, 405 (R.I.1995) (citing *In re Crystal A.,* 476 A.2d 1030, 1033 (R.I.1984)). The factual findings of a trial justice are entitled to great weight, and will not be disturbed unless the trial justice was clearly wrong or misconceived material evidence. *In re Zachary A.,* 690 A.2d 853, 854 (R.I.1997).

After reviewing the record in this case, we are satisfied that there was legally competent evidence to support the findings of the trial justice. By her own admission and by the weight of the evidence, Gloria has had a serious and long-standing addiction to illicit drugs, and although she has engaged in numerous drug treatment programs, she has failed to successfully complete these programs time and time again. After hearing the testimony and examining the evidence before him, an obviously frustrated trial justice found Gloria to be unfit and granted the termination petitions concerning all three children. Gloria argued, however, that in so doing the trial justice should have based this determination on the more recent developments in Gloria's life, particularly her success at SSTARbirth, instead of her past failures. Rather, she alleged that the trial justice limited his findings to her past conduct without regard to her recent success.

We are of the opinion that before terminating her parental rights, the trial justice gave adequate consideration to Gloria's renewed efforts at recovery and her prognosis for sobriety. Specifically, the trial justice noted that Gloria's earliest graduation date from SSTARbirth would be October 1998, followed by a two-year after care plan. The trial justice also noted that, although all three children eventually could be placed with Gloria at SSTARbirth, those decisions would have to be made on a case-by-case basis, and it was therefore unlikely that Eric, Chalena, or Shique could be returned to Gloria's care within a reasonable period. Specifically, the trial justice concluded that, "[c]onsidering the children's physical, psychological, mental and intellectual needs, they are entitled to permanency; they should not have to wait for an indeterminate period of time to find out if their parents will successfully obtain and maintain a substance

---

4. General Laws 1956 § 15–7–7 provides, in pertinent part, that:

"(a) The court shall * * * terminate any and all legal rights of the parent to the child * * *, if the court, by clear and convincing evidence, finds as a fact * * * that:

* * *

(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:

* * *

(iii) The child has been placed in the legal custody or care of the department for children, youth, and families and the parent has a chronic substance abuse problem and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time, considering the child's age and the need for a permanent home. The fact that a parent has been unable to provide care for a child for a period of twelve (12) months due to substance abuse shall constitute prima facie evidence of a chronic substance abuse problem."

free lifestyle." In light of Gloria's history of chronic substance abuse, and her unwillingness or inability to successfully engage in treatment, coupled with the fact that at the time of the trial she had been in the year-long SSTARbirth program for only two months, we are satisfied that clear and convincing evidence was presented to support the decision of the trial justice and, further, that before terminating her parental rights he accorded adequate consideration to Gloria's progress.

This is not to say that Gloria's recent accomplishments were for naught. Notwithstanding her own personal well-being, we note that Gloria has three other children,[5] and her success or failure in that program most certainly will be relevant to DCYF's determination of the need for protective measures with respect to those children. Moreover, if DCYF files a termination petition concerning any of her three remaining children, Gloria's success or failure to achieve and maintain a sober lifestyle certainly will be relevant to the court's determination of those petitions. Therefore, although Gloria's recent progress is certainly relevant, it was simply too late for any hope of reunification she may have had with Eric, Chalena, and Shique.

For the foregoing reasons, we deny the appeal and affirm the decree of the Family Court. The papers in the case may be remanded to the Family Court.

---

5. It was disclosed at oral argument that Gloria has recently given birth to a sixth child.