### In re SUEBUN V. et al.

#### No. 99–472–Appeal.

Supreme Court of Rhode Island.

Feb. 16, 2001.

Thomas J. Corrigan, Jr., Washington Crossing, PA, Frank P. Iacono, Jr., for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on January 24, 2001, pursuant to an order directing the respondents to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the issues raised on appeal at this time.

The respondent-mother, Dawn Beane (mother or respondent), appeals from a decree of the Family Court terminating her parental rights to her children, Suebun, born February 8, 1991; Patricia, born November 8, 1992; and Sengmeney, born January 27, 1994.[1] On appeal, respondent asserted that the Department of Children, Youth and Families (Department or DCYF) failed to prove by clear and convincing evidence that respondent suffered from a chronic substance abuse problem that rendered her incapable of caring for her children. The mother further maintained that the trial justice erred in terminating her parental rights based on the finding that the children had been in DCYF custody for at least twelve months with no substantial probability that the children would be able to return to her care within a reasonable period. Ultimately, she contended that the trial justice erred in granting DCYF's petition to terminate her parental rights with respect to these children. We deem these claims to be without merit.

The Department first became involved with this family on February 21, 1995, when a counselor at Family Resources in Woonsocket called to report that four-year-old Suebun, the oldest child, ignited several fires in and around their home.

1. The children's father, Phattakhone Vong-phakdy (father), also appealed the termination of his parental rights. That appeal was dismissed, however, pursuant to an order of this Court, because of his failure to comply with a previous order compelling him to file a Sup.Ct.R. 12A statement in this case.

Joann Prior (Ms. Prior), a social worker with DCYF, was the only caseworker to be assigned to this family from March 1995, through the termination proceeding. Upon first becoming involved with the family, Ms. Prior learned that Suebun had been sexually abused by his maternal cousins and possibly by other family members. Besides his tendency to set fires, Suebun also had been exhibiting other aggressive behaviors. Ms. Prior quickly established a case plan to deal with the myriad of issues facing the family, including parenting classes to insure proper supervision and care of the children.

The Department provided parent aide services, sexual abuse evaluation and mental health counseling for family members, specifically for mother, father and Suebun. Ms. Prior discussed with respondent the fact that the appointments for the parenting aide services were not being kept. The respondent offered no explanation or excuse for her failure to comply with the case plan that she had signed, but assured the caseworker that she would "follow up." Ms. Prior also informed mother that counseling services had been terminated for Suebun because of respondent's repeated failure to comply with the appointment schedule. The respondent blamed those missed appointments on her four-year-old, asserting that "[he] would go out" when it was time for mother to accompany Suebun to his appointments. A second case plan was prepared on October 28, 1995, again, with the goal of maintaining the children at home while the parents engaged in counseling and parenting classes. An additional goal of maintaining appropriate housing was added as a result of Ms. Prior's concerns that the family had moved several times.[2] The respondent indicated that she would cooperate both with parenting aide services, and with attempts to provide Suebun with additional mental health services.[3]

In January 1996, while the children were in the care of their father, Ms. Prior learned that there had been another incident of possible sexual abuse of three-year-old Patricia, involving the same cousins. A few days later, Ms. Prior received another call from respondent, this time informing her that the father had been arrested and charged with delivery of cocaine. Concerned about the arrest, Ms. Prior suggested that respondent undergo a substance abuse evaluation, and arranged the same with Trihab, Inc. The respondent never submitted to the evaluation. Further, respondent was again experiencing difficulty in maintaining proper housing. The mother informed Ms. Prior that she could not go back to her apartment because the pipes had frozen, so she again took up residence with her sister and her family. Ms. Prior gave respondent the number of an emergency shelter, explaining to her that the children absolutely could not remain in that environment. Eventually, respondent and the children were accepted by the Woonsocket Shelter. However, on February 8, 1996, Ms. Prior was informed that mother was discharged from the shelter because a "crack pipe" was found in her room. At this point, respondent admitted to using cocaine.

Upon further inquiry, Ms. Prior learned that respondent had been using drugs and that she had previously lied about having a problem. However, respondent still refused to undergo a substance abuse evaluation. The children were immediately removed from respondent's care and placed in the custody of DCYF. During this time, the oldest child, Suebun, disclosed to Ms. Prior the conditions in the home and described how respondent and father

---

**2.** It had come to Ms. Prior's attention that the family had been living at Cheryl Belanger's (Belanger) home. Belanger is respondent's sister. Belanger's children, and other children related to her husband were suspected of molesting the children.

**3.** At the time the second case plan was prepared and signed by the parents, Suebun was in the temporary custody of DCYF.

would put the children in the living room so that they could ingest narcotics in the bedroom.

On April 23, 1996, a decree was entered in the Family Court stating that the children were neglected by respondent because of her cocaine abuse. The children were returned to the mother's care at the Woonsocket Shelter, and a new case plan was formulated that directly addressed substance abuse evaluation and treatment—again, with the primary goal to maintain the children in the home. At this point, Ms. Prior met with the parents and discussed budgeting issues and made referrals for various housing programs. She also discussed the importance of remaining free of any and all drugs, attending all counseling sessions, following the advice and recommendations of the counselors, and submitting to weekly urine screens. As of July 1, 1996, respondent had failed to contact either the parenting aide services or the substance abuse program.

Yet another case plan was instituted for this family with the goal of maintaining the children in the home. The primary tasks in this plan were directed toward respondent's retaining independent housing and to maintain a drug and alcohol free lifestyle. Again, respondent failed to cooperate and refused to participate in the services provided to her. The children were removed from respondent's home for the last time. The impetus of this removal was the fact that Suebun, then five-years-old, was found wandering down the street, barefoot with no shirt. On October 3, 1996, Ms. Prior sought and was granted a change of placement for the children. Another case plan was generated in February 1997, with the aim of reunifying the children with their parents. However, a petition to terminate mother's parental rights with respect to her three children was filed on July 30, 1997.

After a trial on the merits, the trial justice found that the Department had established by clear and convincing evidence, that the parents were unfit and that

DCYF had made reasonable efforts to assist the parents and reunify them with their children. Specifically, he found that "[t]he overwhelming testimony establishes by clear and convincing evidence that both parents have a chronic substance abuse problem." Additionally, the trial justice found that:

"[r]espondent mother has not addressed any of the problems that engulf her children. She has continually refused to address her drug problem, refused to engage in parenting classes, allowed the children to be supervised by improper adults and has knowingly resided in the house of an alleged perpetrator."

It is from this decree that respondent appeals.

When considering a petition for the termination of parental rights, the Family Court justice must find by clear and convincing evidence that DCYF made reasonable efforts to reunite the parents and children, and, that notwithstanding those efforts, the parents are unfit to care for the children. *In re Ryan S.,* 728 A.2d 454, 457 (R.I.1999). In a proceeding concerning the termination of parental rights, a trial justice's findings will be accorded great weight. *In re Kristen B.,* 558 A.2d 200, 204 (R.I.1989). As long as the record discloses the existence of legally competent evidence to support the finding, and the trial justice did not overlook or misconceive material evidence nor was he or she otherwise clearly wrong, a determination of unfitness will be upheld. *In re Shaquille C.,* 736 A.2d 100, 101–02 (R.I.1999) (mem.) (citing *In re Jennifer R.,* 667 A.2d 535, 536 (R.I.1995), and *In re Kristen B.,* 558 A.2d at 204).

We are satisfied that in deciding the issues in this case, the trial justice did not overlook or misconceive material evidence, nor was he clearly wrong. The record in this case is replete with legally competent evidence to support the findings of fact, including the testimony of Ms. Prior and other witnesses that respondent

had a substance abuse problem that she consistently refused to address.

The record in this case discloses that respondent abused cocaine on and off from the time that she was thirteen. Although respondent stopped using drugs at certain points when she was pregnant, it is clear that she consistently relapsed. Rather than a few isolated incidents during mother's youth, her drug problem was ongoing and of long duration. Throughout Ms. Prior's contact with this family she stressed the importance of substance abuse evaluation and treatment. She continually arranged for substance abuse evaluation and treatment for the mother. The respondent at one point availed herself of drug counseling, but ultimately quit because she "didn't like the group." The term "chronic" is defined as: "[w]ith reference to diseases, of long duration, or characterized by slowly progressive symptoms; deep seated and obstinate, or threatening a long continuance ***." Black's Law Dictionary ·241–42 (6th ed.1990). It is clear from our comprehensive review of the record that respondent's drug abuse and frequent relapses were a recurring problem that prevented reunification with her children. The father was arrested for delivery of cocaine; the children were often removed from the bedroom and brought into the living room, alone, so that respondent and father could ingest narcotics. Perhaps the most telling evidence of substance abuse arose when mother was discharged from the Woonsocket Shelter after a crack pipe she admitted owning was found in her room. After this information was brought to the attention of the social worker, respondent admitted that she had a drug problem, but refused to seek treatment.

We agree with the trial justice that the Department established by clear and convincing evidence that the children had been in the care and custody of DCYF for at least twelve months and that there was no substantial probability that the children would be returned to their parents' care within a reasonable period. Despite the exhaustive attempts at rehabilitation made by the DCYF social worker in this case, respondent refused to participate in parenting classes and, throughout the two-year period before the filing of the petition to terminate her parental rights was filed, respondent failed to provide and maintain adequate housing and a safe environment for the children. For the most part the family either resided with respondent's sister, where the children were in constant danger of sexual molestation by their cousins and other relatives, or the Woonsocket Shelter, where the family was discharged because of her drug abuse. This evidence overwhelmingly supports a finding of parental unfitness.

Accordingly, the respondent's appeal is denied and dismissed. The judgment of the Family Court is affirmed and the papers in this case are remanded to the Family Court.