**In re TARA P. et al.**

**No. 2002–600–Appeal.**

Supreme Court of Rhode Island.

Dec. 4, 2003.

Frank P. Iacono, Esq., Thomas J. Corrigan, Jr., Esq., for Plaintiff.

Janice Weisfeld, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM:

This case came before the Supreme Court for oral argument on November 13, 2003, pursuant to an order directing the parties to show cause why this appeal should not be summarily decided. The respondent mother, Antonia P., has appealed the termination of her parental rights (TPR) to her three children [1] by the Family Court. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be summarily decided.

On April 15, 2000, the Department of Children, Youth and their Families (DCYF) learned from Women and Infant's Hospital that respondent's youngest child, Devon, had tested positive for cocaine at birth. DCYF immediately placed the baby and his older sisters, Tara (d.o.b.10/17/87) and Tori (d.o.b.8/10/96), with their maternal grandmother, with whom the girls had been staying at the time. In a June 12, 2000, Family Court order, respondent admitted to neglect due to substance abuse.

---

1. The parental rights of the children's putative father also were terminated for abandonment and desertion. He did not appeal the decision.

In an effort to reunify respondent with her children, DCYF formulated four successive case plans requiring respondent to become substance free, obtain stable mental health, provide a stable and nurturing environment for the children, and cooperate with both the visitation plan and with DCYF. As a condition of receiving a referral for mental health counseling from DCYF, respondent was required to submit to frequent toxicology tests and to document four consecutive weeks of sobriety. She was informed that failure to attend a scheduled test would be considered a positive result. Arrangements were made for her to attend various substance abuse programs at different locations, including Advent House, Talbot House, Women's Day and CODAC. During this period, respondent enjoyed supervised visitation with her children at least once a week.

The respondent failed to achieve the mandated four-week period of sobriety after testing positive several times and after repeatedly missing scheduled toxicology tests. On January 8, 2002, DCYF filed a petition to terminate respondent's parental rights pursuant to G.L.1956 § § 15–7–7(a)(2)(iii) and 15–7–7(a)(3). On April 29, 2002, respondent was discharged from Advent House after testing positive for cocaine. She claimed that her discharge was precipitated by a false-positive test and that a second toxicology test performed on the same day supported her contention. She now urges us to believe that this incident devastated her to the extent that it justified a subsequent relapse of cocaine use.

Thereafter, a four-day hearing was conducted in the Family Court on the termination petition. After the state rested its case, respondent presented the court with three unsigned open-adoption decrees under the terms of which the maternal grandmother purportedly agreed to adopt the children.[2] Upon hearing argument on the adoption issue, the trial justice rejected this belated attempt by respondent to avoid a decision on the termination petition. The respondent then rested her case without presenting any additional evidence. Subsequently, the trial justice heard closing arguments and rendered a decision terminating respondent's parental rights. She timely appealed the decision.

The respondent raises two issues on appeal. First, she maintains that, instead of terminating her parental rights, the trial justice should have granted the proposed open-adoption decrees along with their accompanying post-adoption privileges. Second, she contends that the evidence did not support a finding of unfitness by reason of a chronic substance abuse problem. We reject both her arguments.

■ After the state had presented all of its evidence and rested its case, respondent produced the proposed open-adoption decrees in court. The suggested decrees provided in part that:

> "Visitation will continue as presently arranged. It is expected that visits will be on a weekly basis but may be more or less frequent in the discretion of the parties. In no case will the visits be less than two per month."[3]

---

2.  When post-adoption privileges are granted pursuant to G.L.1956 § 15–7–14.1, that grant sometimes is referred to as an "open adoption." In the instant matter, one decree was presented for each of respondent's children.

3.  The proposed decrees also provided that the length and supervision of these visits would be at the discretion of the adoptive mother, and that she would be responsible for providing photographs of the children "when available" and to keep respondent informed of their health and educational progress.

When the decrees were thrust at him, the trial justice initially was confused by the internal conflict contained in the preceding language. That is because, while they guaranteed respondent a minimum of twenty-six visits per year, a continuance of visitation "as presently arranged" constituted more than a doubling of that amount to at least fifty-two visits per year. Despite the fact that trial justice had no *per se* objection to respondent visiting with her children, he was reluctant to give court approval to the number of visits that the decrees suggested.

Section 15–7–14.1(a) provides that "[a]t the time an adoption decree is entered, the court entering the decree may grant post-adoption visitation, contact and/or conveyance of information privileges * * * under subsection (b) to a birth parent * * *." Post-adoption privileges may be granted if:

"(1) The court determines that the best interests of the child would be served by granting post-adoption privileges;

"(2) The court finds there is a significant emotional attachment between the child and the birth parent;

"* * * *

"(4) The adoptive parents and the birth parents jointly negotiate and execute a post-adoption privileges agreement which is approved by and filed with the family court;

"(5) The [D]epartment of [C]hildren, [Y]outh, and [F]amilies and the child's court appointed special advocate or the guardian ad litem if one has been appointed pursuant to § 40–11–12 recommends that the post-adoption privileges agreement be approved by the court; * * *

"(6) Consent to the post-adoption privileges is obtained from the child, if the child is at least twelve (12) years of age; and

"(7) The post-adoption privileges agreement is approved by the court." Section 15–7–14.1(b).

There is no evidence that the open adoptions in this case were jointly negotiated, much less executed, by respondent and her mother, or that fifteen-year old Tara ever consented to the proposed post-adoption privileges. Furthermore, neither DCYF nor the guardian ad litem approved of the decrees as written, and both expressed concern about the frequency of respondent's proposed visitation rights. The record reveals that the guardian ad litem suggested, and the trial justice agreed, that quarterly visitation rights would be more appropriate under the circumstances present here. The respondent rejected this suggestion.

After reviewing the record we conclude that the proposed decrees did not conform with the statute. Considering that there was no evidence that the statutorily affected parties ever had a meeting of the minds, the trial justice could not have granted the decrees. Consequently, there was no abuse of discretion on this issue.

Next we must consider whether there was sufficient evidence to support a finding of unfitness by reason of a chronic substance abuse problem and to support the termination of respondent's parental rights.

When reviewing a Family Court decree involving the termination of parental rights, this Court accords great weight to the trial justice's findings and will not disturb that decision unless there is a showing that the trial justice clearly was wrong or that he or she overlooked or misconceived material evidence. *See In re Christopher B.*, 823 A.2d 301, 307 (R.I. 2003) (citing *In re Raymond C.*, 751 A.2d 281, 282 (R.I.2000) (per curiam)). "As a result, 'we examine the record to determine whether any legally competent evi-

dence exists to support the trial justice's findings.'" *Id.*

In this case, the trial justice granted the termination petition pursuant to § 15–7–7(a)(2)(iii) (unfitness due to a chronic substance abuse problem). "The term 'chronic' is defined as: '[w]ith reference to diseases, of long duration, or characterized by slowly progressive symptoms; deep seated and obstinate, or threatening a long continuance * * *.'" *In re Suebun V.*, 766 A.2d 939, 943 (R.I.2001) (quoting Black's Law Dictionary 241–42 (6th ed.1990)).

"As required by § 15–7–7(a) and (b)(1), and as we previously have held, these statutory bases for a TPR decree require not only that the child-placement agency prove each basis alleged for termination by clear and convincing evidence, but also that any ground for a TPR decree has continued to exist 'notwithstanding the reasonable efforts which shall be made by the agency prior to the filing of the petition to encourage and strengthen the parental relationship so that the child can return safely to the family.'" *In re Christopher B.*, 823 at 307 (quoting § 15–7–7(b)(1)).

Accordingly, "the department is required, pursuant to § 15–7–7(a)(3), to make reasonable efforts to strengthen the parental relationship until a termination petition is filed pursuant to § 15–7–7(b)(2)." *In re Christopher B.*, 823 A.2d at 307 (quoting *In re Joseph S.*, 788 A.2d 475, 477–78 (R.I.2002). "After such an evidentiary showing and an adjudication of unfitness, the inquiry then shifts to the 'best interests of the child.'" *In re Christopher B.*, 823 A.2d at 307. "[T]he primary step before any termination of parental rights is that there be a finding of parental unfitness. Once this fact is established, the best interests of the child outweigh all other considerations." *Id.* (quoting *In re Kristen B.*, 558 A.2d 200, 203 (R.I.1989)).

The trial justice terminated respondent's parental rights, finding that the clear and convincing evidence demonstrated that she was unfit by reason of chronic substance abuse. He determined that respondent had "done little or nothing to avail herself of the services that have been offered to cure this problem" and had failed to prove that she had maintained at least four consecutive weeks of sobriety. He further found that the children had been in the care and custody of the DCYF for at least twelve months and that there was no substantial probability that they would be returned to her care.

After a meticulous review of the record, we are satisfied that in deciding the issues in this case, the trial justice did not overlook or misconceive material evidence, nor was he clearly wrong; the record is replete with legally competent evidence supporting his findings of fact. Thus, we conclude that the trial justice did not err in finding that the state had proven all its allegations by clear and convincing evidence that the respondent was unfit by reason of her chronic and recurring drug abuse problem and that termination of parental rights was in the children's best interest.

Accordingly, the judgment of the Family Court is affirmed and the papers in this case are remanded to the Family Court.