June 15, 2022

**Supreme Court**

No. 2021-16-Appeal.
(P 18-3640)

In re Donnell R-H Jr.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Donnell R-H Jr.          :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Long, for the Court.**  The respondent mother, Rondelle H. (mother or respondent), appeals from a decree of the Family Court, issued pursuant to G.L. 1956 § 15-7-7(a)(3), terminating her parental rights to her son, Donnell.[1]  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the decree of the Family Court.

---

[1] To protect the identity of the child, in this opinion we will use the respondent mother's first name and last initial only.  We intend no disrespect.

## Facts and Procedural History

On June 22, 2018, the Department of Children, Youth, and Families filed a petition in Family Court to terminate the parental rights of Donnell's mother and father pursuant to § 15-7-7(a)(2)(iii) and (a)(3), alleging two independent grounds: (1) The parents were unfit because the prognoses for their substance-use disorders indicated that Donnell would not be able to return to his parents' custody within a reasonable period of time; and (2) Donnell had been placed with DCYF for at least twelve months and there was not a substantial probability that Donnell would be able to return to his parents' care within a reasonable period of time.[2]

The trial on DCYF's petition for the termination of respondent's parental rights was held on February 4, 5, and 10, June 18, 22, and 29, and July 13, 2020. The trial justice heard testimony from respondent, as part of both DCYF's case and her own case; each of respondent's DCYF social caseworkers; a child-support technician; two DCYF supervisors; John Parsons, Ph.D., who had performed respondent's psychological evaluation and a parent-child evaluation; Celeste Greene, respondent's psychotherapist; and Richard Glen Taylor, respondent's family friend. The trial justice also reviewed eight case plans; Dr. Parsons's report of respondent's evaluations; records from Community Care Alliance (CCA) of

---

[2] Donnell's father voluntarily terminated his parental rights and consented to an open adoption of Donnell by the child's current foster family.

respondent's treatment and counseling; and a letter submitted by Ms. Greene regarding respondent's progress in therapy. The following facts are taken from the trial testimony and documents admitted into evidence.

Donnell was born in April 2016 at the Women & Infants Hospital of Rhode Island. A hospital alert issued because of respondent's prior history with DCYF involving her two older children and based on the report of a hospital social worker that Donnell's meconium tested positive for tetrahydrocannabinol (THC) at birth.[3] Both parents admitted to occasional marijuana use, and respondent admitted to smoking marijuana during her pregnancy.

After an investigation, DCYF allowed Donnell to go home with his parents on the condition that both parents would refrain from using any substances, including marijuana, alcohol, or unprescribed medication.

On May 12, 2016, DCYF filed a petition alleging neglect against both parents and assigned Valerie Wesson as the family's first social caseworker. Ms. Wesson met with respondent on May 20, 2016, and discussed treatment for her substance-use disorder.

Approximately two weeks later, respondent tested positive for marijuana use. Consequently, Ms. Wesson created a safety plan and a case plan, dated June 10,

---

[3] Tetrahydrocannabinol (THC) is an active compound in marijuana. Presence of THC in an infant's meconium, the infant's first feces after birth, is evidence of prenatal exposure to cannabis.

2016; both plans had the goal of maintaining Donnell with his parents. The case plan required respondent to refrain from using substances such as alcohol, marijuana, or unprescribed medications; to contact CCA for substance-use disorder and mental-health evaluations and treatment; to follow CCA's recommendations for treatment; to comply with weekly random supervised drug and alcohol screens (screens); to attend all court hearings and appointments with social service providers and DCYF; to complete a parenting class; to contact Dr. Parsons for a psychological evaluation and parent-child evaluation; and to supplement her income by applying for community programs and obtaining employment. The respondent did not sign the case plan, but, at trial, she recalled reviewing it with Ms. Wesson. The respondent signed and agreed to the safety plan, however; the safety plan required respondent to comply with DCYF and treatment services, and provided that respondent's screens must indicate decreasing levels of marijuana in respondent's system.

On June 21, 2016, respondent tested positive for marijuana and cocaine. DCYF removed Donnell from his parents' care and placed him with his maternal grandmother. Ms. Wesson explained to respondent that, for her to reunite with Donnell, she was required to obtain negative results on her screens. Despite this conversation with Ms. Wesson, respondent immediately moved into her mother's

home to continue living with and caring for Donnell. The respondent insisted at trial that DCYF allowed her to live with her mother and Donnell.

Soon after testing positive for marijuana and cocaine, respondent contacted CCA to seek treatment for her substance-use disorder and mental health; respondent began counseling with Ms. Greene.

In July 2016, Ms. Wesson developed the second case plan, which had the same requirements as the first case plan but with the goal of reunifying Donnell with his parents; respondent had made limited progress, and services continued.

At the end of 2016, respondent completed psychological evaluations with Dr. Parsons and another provider. Both Dr. Parsons and the other provider diagnosed respondent with cannabis-use disorder and some form of mood disorder, with Dr. Parsons diagnosing respondent with unspecified bipolar and related disorder and the other provider diagnosing respondent with disruptive mood dysregulation disorder. These diagnoses informed the counseling that respondent was receiving from Ms. Greene; respondent focused on her substance-use disorder and emotion-regulation skills in her sessions. Through CCA, respondent also worked with a nurse practitioner, Edward Lyons Jr., to find medication that was suitable for her diagnoses. Ultimately, after six months, Mr. Lyons and respondent were unable to find a suitable medication combination and respondent resumed using marijuana, which she obtained pursuant to an out-of-state medical marijuana card that she

procured in November 2017. Even before respondent had obtained her medical marijuana card, she continued to test positive for marijuana in her screens.

Stacey Goncalves, respondent's second DCYF social caseworker, created the third and fourth case plans with a reunification goal and substantially identical requirements as the second case plan. The third and fourth case plans were dated February 10 and October 4, 2017, respectively. While respondent made some progress, as noted in the third case plan, Ms. Goncalves reported in the fourth case plan that respondent "refused to attend any services or supports, has not made progress, or has not allowed service provider into home." In November 2017, respondent's screen was positive for cocaine. However, respondent disputed the result, stating that she did not use cocaine.

In October 2017 Donnell suffered an accidental burn while living at his maternal grandmother's home, which required surgery and skin grafts to his arm and leg. After his injury, DCYF moved Donnell to his current foster family.

Jennifer Ryan was respondent's third DCYF social caseworker, from December 2017 through August 2018. At the end of 2017, Ms. Ryan observed that respondent was struggling with substance-use disorder and her mental wellness, and that her housing situation was unstable. Ms. Ryan discussed a fifth case plan with respondent, dated April 9, 2018, which had substantially the same requirements as

the previous case plans; the fifth case plan had two concurrent goals, reunification and adoption.

At that time, respondent was making marginal progress toward the requirements in the case plans, but the lack of progress in addressing her substance-use disorder and her mental wellness remained a major barrier to reunification. The respondent often missed her screens.

Additionally, since beginning counseling at CCA with Ms. Greene, respondent's attendance was inconsistent. The respondent attended fewer than two-thirds of the sessions scheduled with Ms. Greene at CCA. On two occasions, CCA sent respondent a letter notifying her of excessive absences and warning her that services would be terminated if she did not return; each time, respondent quickly resumed treatment.

Ms. Ryan indicated in a hearing in late April 2018 that DCYF intended to file a petition for the involuntary termination of parental rights because respondent was not making adequate progress toward the requirements in the case plans, and the case had been open for over two years. Ms. Ryan created a sixth case plan, which had the goal of adoption, on August 17, 2018.

Emily Mahoney was respondent's fourth DCYF social caseworker, assigned from September 2018 through April 2019. She drafted the seventh case plan, dated March 8, 2019, which also had the goal of adoption.

Brooke Darelius was respondent's fifth DCYF social caseworker, up to the time of the trial. Ms. Darelius testified that Donnell was doing well in his foster home, which was considered a preadoptive home, and he had no developmental delays. She reported that he was well-loved and had bonded with his foster family. The eighth case plan, which had the goal of adoption, was dated August 30, 2019.

For her case-in-chief, respondent submitted a letter authored by Ms. Greene that speaks to respondent's love for Donnell, her persistent efforts, and the sincerity of her desire to be a parent. The respondent also testified about her dedication to do what was best for her family and the progress she had made through counseling with Ms. Greene at CCA, despite the frustration she experienced while working with DCYF. The respondent expressed her deep love for Donnell and spoke of the strong bond they share.

After trial, the trial justice reviewed the trial testimony and trial exhibits and made the following findings of fact. Donnell had not lived with respondent since June 2016. The respondent was able to comply with the case plans created by DCYF until early 2017, "when her emotional deterioration and chronic substance abuse overwhelmed her efforts to reunify with her son." The trial justice determined that the state had proven by clear and convincing evidence that respondent was unfit to parent Donnell; Donnell had been in DCYF custody and control for at least twelve months; and respondent was offered or received services to remedy the situation that

led to Donnell being placed in foster care, but it was unlikely that Donnell could be safely returned to respondent's care within a reasonable period of time, given Donnell's age and need for a permanent home.

The trial justice also found that Donnell was "a happy child * * * [who] is in a safe home, thriving, well cared [for] and well-groomed[,]" and that he "has adjusted well to his pre-adoptive family" and "seems to be developmentally on target with no identified special needs." Accordingly, the trial justice found that "it is in Donnell's best interest that the parental rights of respondent mother be terminated."

A decree terminating respondent's parental rights entered on October 26, 2020. The respondent filed a timely notice of appeal.

Before this Court, respondent argues that the trial justice erred by finding that (1) a chronic "substance abuse problem" rendered her unable to care for Donnell; (2) DCYF had proven by clear and convincing evidence that respondent was unfit; and (3) it would be in Donnell's best interests to terminate respondent's parental rights.

**Termination of Parental Rights**

"On appeal, this Court reviews termination of parental rights rulings by examining the record to establish whether the Family Court justice's findings are supported by legal and competent evidence." *In re Gelvin B.*, 251 A.3d 503, 508-09 (R.I. 2021) (quoting *In re Violet G.*, 212 A.3d 160, 166 (R.I. 2019)). "These findings

are entitled to great weight, and this Court will not disturb them unless they are clearly wrong or the trial justice overlooked or misconceived material evidence." *Id.* at 509 (quoting *In re Violet G.*, 212 A.3d at 166). The "findings must be supported by clear and convincing evidence." *Id.* (quoting *In re Violet G.*, 212 A.3d at 166). "Natural parents have a fundamental liberty interest in the 'care, custody, and management' of their children." *In re Destiny D.*, 922 A.2d 168, 172 (R.I. 2007) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). "The trial justice must find that the parent is unfit before terminating [their] parental rights." *In re Pricillion R.*, 971 A.2d 599, 604 (R.I. 2009). After a finding of parental unfitness, "the best interests of the child outweigh all other considerations." *Id.* (quoting *In re Victoria L.*, 950 A.2d 1168, 1174 (R.I. 2008)).

DCYF filed the petition to terminate respondent's parental rights pursuant to § 15-7-7(a)(2)(iii) and (a)(3), which provide:

> "(a) The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency, * * * after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:

> "* * *

> "(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to, the following:

- 10 -

"* * *

"(iii) The child has been placed in the legal custody or care of the department of children, youth, and families and the parent has a chronic substance abuse problem and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time, considering the child's age and the need for a permanent home. The fact that a parent has been unable to provide care for a child for a period of twelve (12) months due to substance abuse shall constitute prima facie evidence of a chronic substance abuse problem[.]

"* * *

"(3) The child has been placed in the legal custody or care of the department of children, youth, and families for at least twelve (12) months, and the parents were offered or received services to correct the situation that led to the child being placed; provided, that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home[.]"

It is undisputed that DCYF made reasonable efforts to achieve reunification and that Donnell had been in the custody and care of DCYF for a period of at least twelve months at the time that DCYF filed the present petition. We therefore will address only respondent's arguments regarding her parental fitness, substance use, and the child's best interests.

## Parental Fitness

"Before terminating a parent's rights to his or her child, the Family Court justice must find that the parent is unfit." *In re Elana W.*, 249 A.3d 287, 293 (R.I. 2021) (quoting *In re Violet G.*, 212 A.3d at 166). "Accordingly, it is now our duty to review the finding of unfitness made by the justice of the Family Court and to determine whether or not that finding was supported by clear and convincing evidence." *In re Brooklyn M.*, 933 A.2d 1113, 1122 (R.I. 2007).

After careful review of the record, we conclude that the finding of respondent's unfitness is supported by clear and convincing evidence. Our review of the record indicates that the finding is not clearly wrong, nor was evidence overlooked or misconceived.

From April 2016, when Donnell was born, through the time the petition was filed by DCYF in June 2018, respondent struggled with her mental wellness and her substance-use disorder, frequently testing positive for marijuana. There is no evidence in the record to support a finding that, despite her having obtained an out-of-state medical marijuana card in November 2017, respondent's use of marijuana was prescribed by her treatment providers at CCA or elsewhere. Additionally, while respondent testified that she benefited greatly from the counseling she received from Ms. Greene at CCA, she remained inconsistent in her attendance, attending fewer than two-thirds of the scheduled sessions.

The respondent maintains that she was not unfit due to "chronic substance abuse[,]" contending that she used marijuana to "self-medicat[e]" because the prescribed medications did not work for her. She also argues that the record regarding her positive screens for cocaine was unclear; respondent admitted to using cocaine only in June 2016, and she disputes the positive result in November 2017. Nevertheless, the record reflects that respondent was unable to reunify with Donnell after his removal in 2016, notwithstanding the services that DCYF offered and provided to correct the situation that led to Donnell's placement in foster care. *See* § 15-7-7(a)(3). The respondent was unable to make sufficient progress on the requirements set out in the case plans—including assignments relating to her substance-use disorder, mental wellness, and parenting ability—that would have allowed her to reunify with Donnell. Accordingly, despite respondent's assertion that her substance-use disorder was mischaracterized, because her overall progress was lacking, her argument cannot overcome the trial justice's finding.

The respondent's love for Donnell is abundantly clear, even from the pages of a "cold" record. We recognize respondent's sincere efforts with her mental-wellness counseling and her attempts to engage in treatment for substance-use disorder. However, tragically, any progress she made came much too slowly. Donnell had been in DCYF's custody for two years when the petition to terminate her parental rights was filed. *See* § 15-7-7(a)(3).

- 13 -

We have reviewed the record and the trial justice's decision, and we cannot conclude that the trial justice erred in finding that Donnell had been placed with DCYF for at least twelve months and that there was not a substantial probability that Donnell could return to respondent's care within a reasonable period of time. Because we have determined that respondent is unfit on the basis of § 15-7-7(a)(3), we need not address the termination of respondent's parental rights on the grounds of her substance-use disorder under § 15-7-7(a)(2)(iii). *See In re Davyon G.*, 10 A.3d 448, 455 (R.I. 2010) ("This Court 'shall uphold the lower court's order for termination as long as this Court finds that the case DCYF presented under either one of the * * * grounds withstands appellate challenge.") (brackets omitted) (quoting *In re William, Susan, and Joseph*, 448 A.2d 1250, 1251 (R.I. 1982)).

## Best Interests of the Child

The termination of parental rights is a painful occasion. However, once DCYF establishes parental unfitness and that reasonable efforts at reunification were made, the best interests of the child outweigh all other considerations. *E.g.*, *In re Violet G.*, 212 A.3d at 167. In considering the best interests of the child, this Court is mindful of the "significance of severing the bond between parent and child[.]" *In re Alexis L.*, 972 A.2d 159, 170 (R.I. 2009).

Our careful review of the record reveals that "[t]he trial justice's finding that the respondent's termination of parental rights was in [Donnell's] best interest is,

- 14 -

like his other findings, supported by legally competent evidence." *In re Gelvin B.*, 251 A.3d at 511. Donnell is now more than six years old, and he has spent all but two months of his life in foster care. Since October 2017, Donnell has lived with his current foster family, who would like to adopt him and whom he regards as family. Donnell is "entitled to permanency; [he] should not have to wait for an indeterminate period of time" for respondent to reunify with him. *In re Eric K.*, 756 A.2d 769, 772 (R.I. 2000).

Although we recognize the respondent's genuine love and affection for Donnell and her commitment to reunifying with her son, "once unfitness is established, the primary focus no longer is on the parent, but on the child's best interests." *In re Shawn M.*, 898 A.2d 102, 108 (R.I. 2006). Accordingly, we discern no error in the trial justice's finding that it is in Donnell's best interests to terminate the respondent's parental rights.

## Conclusion

For the foregoing reasons, we affirm the decree appealed from and remand the record in this case to the Family Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Donnell R-H, Jr. |
| **Case Number** | No. 2021-16-Appeal.<br>(P 18-3640) |
| **Date Opinion Filed** | June 15, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Chief Judge Michael B. Forte |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Benjamin Copple<br>Department of Children, Youth, and Families<br><br>Joseph A. Palmieri<br>Court Appointed Special Advocate |
| | For Respondent:<br><br>Angela M. Yingling<br>Office of the Public Defender |