April 27, 2023

**Supreme Court**

No. 2022-23-Appeal.
(KJ 20-578)

In re J.B.                :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re J.B.                              :

Present: Suttell, C.J., Goldberg, Robinson, and Long, JJ.

**O P I N I O N**

**Justice Long, for the Court.** The respondent father, William B., Jr. (father or respondent), appeals from a decree of the Family Court, issued pursuant to G.L. 1956 § 15-7-7(a)(3), terminating his parental rights to his son, J.B.[1] This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that we may decide this case without further briefing or argument. For the reasons set forth in this opinion, we affirm the decree of the Family Court.

---

[1] To protect the identity of the child, this opinion uses the respondent father's first name and last initial only. We intend no disrespect.

**Facts and Procedural History**

On January 27, 2020, the Department of Children, Youth, and Families (DCYF) filed a petition in Family Court to terminate the parental rights of J.B.'s mother and father based on two independent grounds of unfitness: (1) The parents' substance-use disorder and their prognosis indicated that J.B. was unable to return to their custody within a reasonable period of time; and (2) J.B. had been placed with DCYF for a minimum of twelve months without a substantial probability that he could return to his parents' care within a reasonable period of time.[2]

The chief judge of the Family Court held a six-day bench trial on DCYF's termination petition in June 2021, during which he admitted nineteen exhibits and heard testimony from respondent; the DCYF caseworkers assigned to work with the family; John Parsons, Ph.D., who conducted respondent's psychological and parent-child evaluation; a DCYF child protective investigations supervisor; Analisa Goncalves, a clinical therapist at the Providence Center; and Omer Cermik, M.D., a psychiatrist at the Providence Center. A summary of the testimony and documentary evidence relevant to our review follows.

J.B. was born on November 25, 2013, and lived with respondent and his mother until they separated from one another. After the separation, the Family Court

---

[2] J.B.'s mother voluntarily terminated her parental rights and signed a direct consent adoption.

entered an order in October 2016 granting joint legal custody to the parents, placing J.B. with his mother, and providing respondent with a visitation schedule. However, on February 22, 2018, respondent contacted the DCYF hotline to inform DCYF that he suspected that J.B.'s mother was using illegal drugs. DCYF investigated respondent's allegations, filed a neglect petition, and placed J.B. in relative foster care with his maternal grandmother, where he currently resides. DCYF declined to place J.B. with respondent based on his previous criminal record, prior substance use, his mental health history, the fact that he was not currently caring for J.B., and what DCYF perceived as his delay in reporting J.B.'s mother's substance use.

DCYF ultimately developed three case plans in an effort to facilitate respondent's reunification with his son. All three case plans required respondent to participate in efforts to remediate aspects of his life concerning potential substance-use disorders, his mental health, and his ability to parent J.B.

After meeting with DCYF caseworker Patrick Antoine, who developed the first case plan, respondent attended multiple meetings with Dr. Parsons, during which he underwent a comprehensive psychological evaluation and completed an interactive session with J.B. The respondent's experience with Dr. Parsons was largely unsuccessful. Doctor Parsons described respondent as condescending, rude, and somewhat intimidating. Doctor Parsons ultimately diagnosed respondent with a personality disorder after assessing respondent's prior criminal history, previous

time spent in incarceration, and mental health challenges, and administering the Minnesota Multiphasic Personality Inventory.

Doctor Parsons prepared a psychological test report indicating that reunification between respondent and J.B. was at moderate risk for multiple reasons, including respondent's noncompliance with the evaluation; his impulsivity, limited insight, and poor judgment; respondent's frequent marijuana consumption; his refusal to receive mental health services; and his overall orientation to the circumstances leading to DCYF's involvement in his family's life. Doctor Parsons also found "limited evidence to suggest [respondent] has the protective capacity to place the needs of his son above his own." Ultimately, Dr. Parsons recommended in the report that respondent participate in an intensive substance-abuse treatment program, attend individual psychotherapy with a cognitive/behavioral approach, and submit to a psychiatric evaluation to determine his need for psychotropic medications.

Notwithstanding Dr. Parsons's recommendations and the similar directives contained in his case plans, respondent did not accomplish the tasks required to complete the reunification process. Specifically, Mr. Antoine testified that while respondent completed a substance-abuse assessment, he neglected to complete an intensive substance abuse treatment program. Mr. Antoine also testified that respondent did not complete psychotherapy counseling or engage with a psychiatrist

to assess his need for psychotropic medication prior to April 2019, when DCYF removed Mr. Antoine from respondent's case.

Ms. Christina Narducci, the second DCYF caseworker assigned, also confirmed respondent's failure to comply with the tasks required for reunification. She testified that DCYF asked respondent to provide prescription information related to his medical marijuana, but he failed to do so. She further testified that respondent's final case plan required him to participate in substance-abuse counseling and, along with his other required tasks, he was unsuccessful in doing so.

Regarding visitation with J.B., respondent was dissatisfied with attending visits at DCYF facilities and expressed a desire to move them to a different location. Based on respondent's request, DCYF facilitated supervised visitation at the Children's Museum beginning in June 2018. However, respondent refused to participate in the Families Together parenting program at the Children's Museum, explaining that he had had "enough visits at the Museum." As a result, Families Together discharged him from the parenting program on November 19, 2018.

The respondent's failure to comply with the requirements of his case plan resulted in the Family Court suspending his visitation on one occasion and eventually issuing a decree ordering him to comply with the recommendations contained in Dr. Parsons's report. Notwithstanding the Family Court's decree,

respondent failed to adhere to the recommendations, and Ms. Narducci therefore filed a petition to terminate his parental rights on January 27, 2020.

The respondent also engaged in a pattern of serious and concerning behavior throughout the duration of his case. Mr. Antoine testified that respondent acted aggressively and threatened him on numerous occasions related to his visitation with J.B. On one such occasion, during a meeting between Mr. Antoine and respondent regarding Dr. Parsons's report, Mr. Antoine testified, respondent's attorney had to physically restrain him during an outburst. The trial record further indicates that J.B.'s mother received a protective order against respondent based on threats he made to murder nearly everyone involved in this matter, including a Family Court justice and two caseworkers.

The respondent testified on his own behalf and called both Analisa Goncalves and Dr. Cermik of the Providence Center in support of the retention of his parental rights. The respondent participated in a mental health intake assessment and four counseling sessions with Ms. Goncalves beginning in September 2019, but ultimately declined to seek further mental health counseling. The respondent also attended a one-hour psychiatric evaluation in September 2019 with Dr. Cermik, who diagnosed him with an adjustment disorder.

After the trial concluded, the trial justice issued a written decision wherein he stated that he gave great weight to Dr. Parsons's evaluation and recommendations

for respondent to complete an intensive substance-abuse treatment program, receive individual psychotherapy, and attend an evaluation to assess his potential need for psychotropic medication.

The trial justice found by clear and convincing evidence that respondent failed to attend an intensive substance-abuse treatment program; did not engage in any mental health counseling after an initial evaluation in September 2019; refused to pursue cognitive/behavioral counseling; and declined to participate in the Families Together parenting program. The trial justice noted respondent's failure to provide a medical marijuana prescription, as well as his threatening, aggressive, and inappropriate behavior throughout this matter. Significantly, the trial justice found that respondent's "tendency to escalate quickly into aggressive behavior and threats of violence, to dysregulate when frustrated, to refuse to recognize that his marijuana usage and mental health need any attention beyond medical marijuana presents a serious risk of harm to his child." Finally, the trial justice found that J.B. was thriving in the care of his maternal grandmother and that it was in his best interests to terminate respondent's parental rights.

On January 14, 2022, the Family Court entered a decree terminating respondent's parental rights pursuant to § 15-7-7(a)(3). The respondent filed a timely notice of appeal.

## Standard of Review

When reviewing a termination of parental rights on appeal, this Court examines the record to determine whether the Family Court justice's findings are supported by legal and competent evidence. *See In re Donnell R-H Jr.*, 275 A.3d 1139, 1143 (R.I. 2022). This Court affords the Family Court justice's findings great weight and will refuse to disturb them unless we conclude that they are clearly wrong or that the trial justice either overlooked or misconceived material evidence. *Id.* In a decision to terminate an individual's parental rights, the Family Court justice must determine that these findings are supported by clear and convincing evidence. *Id.* at 1143-44.

## Discussion

The respondent argues that the trial justice erred in finding that he is not a fit parent who can care for J.B. immediately. He further argues that, in the absence of a well-supported finding of unfitness, it is in J.B.'s best interests to be with his father. We disagree.

Prior to terminating a parent's rights, the trial justice must find that the parent is unfit. *See In re Pricillion R.*, 971 A.2d 599, 604 (R.I. 2009). Once the Family Court justice determines that a parent is unfit, "the best interests of the child outweigh all other considerations." *See id.* (quoting *In re Victoria L.*, 950 A.2d 1168, 1174 (R.I. 2008)).

Section 15-7-7(a)(3) provides the following:

> "(a) The court shall, upon a petition duly filed by a governmental child placement agency or licensed child placement agency, or by the birthmother or guardian of a child born under circumstances referenced in subsection (a)(2)(viii) of this section, after notice to the parent and a hearing on the petition, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that:

> "* * *

> "(3) The child has been placed in the legal custody or care of the department of children, youth and families for at least twelve (12) months, and the parents were offered or received services to correct the situation that led to the child being placed; provided, that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home[.]"

Our careful examination of the record indicates that J.B. came into the custody and care of DCYF on February 22, 2018, after respondent contacted the DCYF hotline. DCYF's initial investigation prompted serious and immediate misgivings about placing J.B. with respondent. Specifically, the investigation uncovered several concerns including respondent's previous criminal record, his past substance use and mental health history, and the fact that he was not currently caring for J.B. The evidence in the record demonstrates that DCYF attempted to address these concerns throughout the duration of this case by creating three case plans and making referrals

for services and assistance. However, respondent refused to meaningfully acknowledge DCYF's concerns regarding his mental health and potential substance-use challenges and resisted DCYF's attempts to assist him in these areas: The record is replete with evidence demonstrating respondent's explosive temper and overall hostility to DCYF's involvement in this matter. Moreover, Dr. Parsons, the only mental health provider with an opportunity to substantively observe respondent and J.B. together, expressed formidable concerns regarding his ability to parent J.B. In fact, it is clear from the record that respondent never moved beyond supervised visitation with J.B. Our review of the evidence in the record leaves this Court with no doubt that competent evidence supports the findings of the trial justice.

After hearing testimony from the witnesses and reviewing the exhibits presented by the parties, the trial justice thoroughly outlined respondent's failure to meaningfully engage with the directives of his case plans. Notwithstanding prior court orders directing compliance with DCYF and Dr. Parsons's recommendations, the trial justice found that respondent failed to participate in the Families Together parenting program; refused to attend a substance-abuse treatment program; and failed to engage in any mental health counseling. We have held on several prior occasions that a parent's lack of interest in her or his child exemplified by an unwillingness to cooperate with DCYF services can serve as a sufficient basis for

the Family Court to make a finding of unfitness. *See In re James H.*, 181 A.3d 19, 26-27 (R.I. 2018).

Nevertheless, respondent maintains that he is justified in refusing to follow the recommendations mandated by the Family Court. Specifically, respondent argues that we should excuse his failure to follow the Family Court's directives because he does not have mental health or substance-use concerns that would prevent him from successfully parenting J.B. With respect to his substance use, respondent asserts that the trial justice should not have faulted him for failing to produce a marijuana prescription because doctors allegedly cannot do so in Rhode Island[3] and further, that the trial justice should not have relied on his drug screens without expert testimony. Regarding his mental health and behavioral history,

---

[3] More specifically, respondent asserts that the federal government's treatment of marijuana as a controlled substance prevents doctors from "prescribing" it to patients in Rhode Island. Therefore, he argues, the trial justice's decision erroneously faulted him for failing to produce a medical marijuana prescription. Before this Court, respondent's counsel noted that trial counsel attempted to elicit information regarding this alleged impossibility while cross-examining Ms. Narducci. During this exchange with Ms. Narducci, the trial justice directed respondent's counsel to address this issue in a post-trial memorandum. Our review of the record reveals that respondent did not do so. Further, it appears that respondent himself testified that a doctor prescribed him medical marijuana, and Ms. Narducci also testified that DCYF sought background information related to his prescription in an effort to determine the validity of his medical marijuana card and the underlying health concern leading to its issuance. Based on respondent's refusal to provide DCYF with additional information surrounding his medical marijuana card, this Court is unable to conclude that the trial justice erred in finding that respondent failed to produce his prescription for medical marijuana.

- 11 -

respondent argues that the medical evidence presented in this case does not support a finding that he has serious mental health concerns. Similarly, he argues that the trial justice's findings overexaggerated his inability to control his emotions and that the trial justice should not have relied on his history of violence to support the finding of unfitness.

The respondent's arguments, however, overlook the multifaceted and wide-ranging concerns identified in the trial justice's decision supporting the termination of his parental rights. While this Court acknowledges respondent's objection to the trial justice's characterization of his mental health and substance-use concerns, it is undisputed that respondent failed to carry out the required directives of his case plans. Further, respondent has not demonstrated that he meaningfully attempted to overcome Dr. Parsons's concerns that he lacks "the protective capacity to place the needs of his son above his own." Therefore, we are not persuaded by respondent's arguments that the trial justice erred in finding that he is not a fit parent who can care for J.B. immediately.

This Court recognizes that respondent clearly loves his son. Further, we credit respondent's initial attempts to address the goals identified in his case plans. However, our review of the record compels the conclusion that the trial justice did not err in determining that J.B. had been placed with DCYF for at least twelve months, that DCYF offered services to address the reasons for placement in DCYF

custody after February 22, 2018, and that there was not a substantial probability that he could return to respondent's care within a reasonable period of time. Therefore, we conclude that the trial justice did not err in determining that respondent is an unfit parent pursuant to § 15-7-7(a)(3).

Once DCYF establishes that a respondent is an unfit parent and that it made reasonable efforts at reunification, the child's best interests outweigh all other considerations. *In re Donnell R-H Jr.*, 275 A.3d at 1144. When this Court considers the best interests of the child, we remain mindful of the monumental impact of severing the bond between parent and child. *Id*. at 1145-46. Nevertheless, this Court's review of the record reveals that the trial justice's findings regarding J.B.'s best interests are supported by legally competent evidence. *See id.* at 1146. The trial justice determined that J.B. has lived with his maternal grandmother for several years and has formed a strong bond in her household. Our prior cases acknowledge a child's entitlement to permanency and the unfairness of waiting for a respondent parent for an indeterminate period of time. *See id.* (citing *In re Eric K.*, 756 A.2d 769, 772 (R.I. 2000)). Based on the stability and longstanding nature of J.B.'s current placement, this Court agrees that it is in J.B.'s best interests to terminate the respondent's parental rights.

This Court acknowledges the respondent's connection with his son. However, our conclusion regarding the finding of his unfitness shifts our focus away from the

parent and toward the child. *In re Donnell R-H Jr.*, 275 A.3d at 1146.  Accordingly, we discern no error in the trial justice's finding that termination of the respondent's parental rights is in J.B.'s best interests.

## Conclusion

Based on the foregoing, we affirm the decree appealed from and remand the record in this matter to the Family Court.

Justice Lynch Prata did not participate.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re J.B. |
| **Case Number** | No. 2022-23-Appeal. (KJ 20-578) |
| **Date Opinion Filed** | April 27, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Chief Judge Michael B. Forte |
| **Attorney(s) on Appeal** | For Petitioner: Alexander B. Terry Court Appointed Special Advocate Dianne L. Leyden Department of Children, Youth, and Families |
| | For Respondent: Kara J. Maguire, Esq. |